FILED
JAMES BONINI
CLERK
09 SEP 18 AM 1:22
U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
EAST. DIV. COLUMBUS

IN THE UNITED STATES DISTRICT COURT
FOR SOUTHERN DISTRICT OF OHIO, EASTERN DIVISION

**ROMELL BROOM**
Inmate No. 187-343
Southern Ohio Correctional Facility
1724 State Route 728
Lucasville, Ohio 45699

Plaintiff,

CASE NO. 2:09 CV 823

JUDGE FROST

MAGISTRATE JUDGE ABEL

vs.

**Plaintiff's Original Complaint for Injunctive and Declaratory Relief Attorney Fees, and Costs of Suit Under 42 U.S.C. § 1983**

**TED STRICKLAND, Governor**
State of Ohio
77 South High Street, 30th Floor
Columbus, Ohio 43215,

**TERRY COLLINS, Director**
Ohio Dept. of Rehabilitation & Correction
1050 Freeway Drive North
Columbus, Ohio 43229,

**PHIL KERNS, Warden**
Southern Ohio Correctional Facility
1724 State Route 728
Lucasville, Ohio 45699,

**JOHN/JANE DOE #1, Execution Team Member**
c/o Southern Ohio Correctional Facility
1724 State Route 728
Lucasville, Ohio 45699,

**JOHN/JANE DOE #2, Execution Team Member**
c/o Southern Ohio Correctional Facility
1724 State Route 728
Lucasville, Ohio 45699,

**JOHN/JANE DOE #3, Execntion Team Member**
c/o Southern Ohio Correctional Facility
1724 State Route 728
Lucasville, Ohio 45699,

**JOHN/JANE DOE #4, Execution Team Member**
c/o Southern Ohio Correctional Facility
1724 State Route 728
Lucasville, Ohio 45699,

**JOHN/JANE DOE #5, Execution Team Member**
c/o Southern Ohio Correctional Facility
1724 State Route 728
Lucasville, Ohio 45699,

**JOHN/JANE DOE #6, Execution Team Member**
c/o Southern Ohio Correctional Facility
1724 State Route 728
Lucasville, Ohio 45699,

**JOHN/JANE DOE #7, Execution Team Member**
c/o Southern Ohio Correctional Facility
1724 State Route 728
Lucasville, Ohio 45699,

**JOHN/JANE DOE #8, Execution Team Member**
c/o Southern Ohio Correctional Facility
1724 State Route 728
Lucasville, Ohio 45699,

**JOHN/JANE DOE #9, Execution Team Member**
c/o Southern Ohio Correctional Facility
1724 State Route 728
Lucasville, Ohio 45699,

**JOHN/JANE DOE #10, Execution Team Member**
c/o Southern Ohio Correctional Facility
1724 State Route 728
Lucasville, Ohio 45699,

**JOHN/JANE DOE #11, Execution Team Member**
c/o Southern Ohio Correctional Facility
1724 State Route 728
Lucasville, Ohio 45699,

and

**JOHN/JANE DOE #12, Execution Team Member**
c/o Southern Ohio Correctional Facility
1724 State Route 728
Lucasville, Ohio 45699,

Defendants.

## COMPLAINT

### SUMMARY OF ACTION

1. The defendants on September 15, 2009, attempted to execute Plaintiff Romell Broom, but they failed. He has survived the execution and brings this action to prevent the defendants: (a) from trying ever again, (b) from trying again using the same flawed and unconstitutional procedures and protocols they used on September 15, 2009, and (c) from trying again in one week under any circumstances.

2. Prior to the execution Broom was denied the right to consult with his counsel privately. During the course of the execution, after it became apparent that the proeedure was not proceeding according to Ohio's execution protocol, counsel was denied access to Broom and Broom was denied access to his counsel. Counsel was denied use of the telephone in the death house and was not allowed to have a cell phone in the death house. Counsel was required to leave the building in order to make telephone calls to co-counsel and others in order to take legal steps to try to stop the execution-gone-wrong.

3. The pain, suffering and distress to which Broom was subjected on September 15, 2009, went well beyond that which is tolerated by the United States Constitution. It was a form of torture that exposed Broom to the prospect of a slow, lingering death, not the quick and painless one he was promised and to which he is constitutionally entitled if he is going to be executed by defendants. In the circumstances of this case, the pain, suffering and distress were deliberately and intentionally inflicted upon Broom, and the fact that he would suffer such pain, suffering and distress was completely foreseeable to defendants, as opposed to being the result of

an "accident," or an "innocent misadventure," or an "isolated mishap." It was unnecessary pain, suffering and distress.

4. Any further attempts by defendants to execute Broom, by lethal injection or any other means, would violate the prohibition against cruel and unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitution. Any further attempts would also violate Broom's right to substantive due process as guaranteed by the Fourteenth Amendment because Ohio has a statutory guarantee of a qnick and painless execution, something the defendants have now demonstrated they are unable to provide to Broom. Broom is entitled to temporary, preliminary and permanent injunctive relief against any further efforts by the defendants to seek to execute him.

5. In the alternative, and even if this Court finds that another attempt on Broom's life may lawfully be made by these defendants, the defendants cannot make that attempt using the same flawed and broken procedures they used on September 15, 2009. The defendants have demonstrated by their actions at Broom's attempted execution on September 15, 2009, that the procedures, practices, protocols, personnel and means they adopted and employed for use during his execution, and which they actually used at his execution, are not sufficient to allow them to cause his death in a manner that comports with the requirements of the Eighth and Fourteenth Amendments. Broom is thus entitled to temporary, preliminary and permanent injunctive relief against any further efforts by the defendants to seek to execute Broom using the constitutionally deficient procedures, practices, protocols, personnel and means they currently use and which they used on September 15, 2009.

6. At the very least, and even if this Court finds that another attempt on Broom's life may lawfully be made by these defendants, the defendants cannot make that attempt on

September 22, 2009, because one week is not sufficient time for the injuries defendants inflicted upon Broom to heal and for him to be ready to again face execution. Another attempt to execute Broom may not be made until a reasonable amount of time has passed to allow for Broom's injuries to heal, which Broom contends is at least 6 months.

7. Broom has now actually suffered severe harm as a result of Ohio's lethal injection protocol in violation of thc Eighth and Fourteenth Amendments to the United States Constitution. <u>See</u> <u>Baze v. Rees</u>, 128 S. Ct. 1520, 1532 (2008). His attempted execution was neither quick nor painless as required by O.R.C. § 2949.22(A), which applies to this action through the Due Process Clause, and defendants are not capable of making his execution quick and painless if they continue to use the same defective procedures and deficient personnel.

8. Alternate means of execution are readily available that would have avoided the substantial and severe pain that Broom was forced to endure by these defendants, and will be forced to endure again if they are permitted to execute him again using the same defective procedures and deficicnt personnel. Defendants have no legitimate penological justification for their refusal to adopt alternative methods of execution in the face of defendants' track record of botched exeeutions under their previous and eurrent execution protocols, including the most recent botched execution of Romell Broom.

9. Furthermore, defendants violated Broom's constitutional rights during his attempted execution on September 15, 2009, by denying him the unfettered right to have his counsel present to witness his execution and to consult with him in private before the execution process started and after the execution process was begun. Indeed, after it became clear that defendants were unable to obtain access to Broom's veins after prolonged and repeated attempts, Broom's counsel sought to meet with Broom only to be told that once the execution proeess

started, it is protocol that attorneys cannot have contact with their client. Defendants created further impediments to ending the execution gone wrong earlier than it was, by denying counsel use of the death house telephone and prohibiting counsel from having a cell phone at the death house.

## JURISDICTION AND VENUE

10. This action is brought under 42 U.S.C. § 1983 for both actual and threatened violations of Broom's right to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitution; Broom's rights to be free from violations of his substantive and procedural due process rights under the Fourteenth Amendment to the United States Constitution; Broom's rights to counsel under the Sixth and Fourteenth Amendments to the United States Constitution; and Broom's right to Equal Protection under the Fourteenth Amendment to the United States Constitution.

11. Broom seeks equitable, injunctive, and declaratory relief.

12. This Court has jurisdiction over this matter under 28 U.S.C. § 1331, in that it arises under the Constitution of the United States; under 28 U.S.C. § 1343(a)(3), in that it is brought to redress actual and threatened deprivations, under color of state authority, of rights, privileges, and immunities secured by the United States Constitution; under 28 U.S.C. § 1343(a)(4), in that it seeks to secure equitable relief under an Act of Congress, specifically 42 U.S.C. § 1983, which provides a cause of action for the protection of civil rights; under 28 U.S.C. § 2201(a), in that one purpose of this action is to secure declaratory relief; and under 28 U.S.C. § 2202, in that one purpose of this action is to secure preliminary and permanent injunctive relief. This Court has supplemental jurisdiction over any state statutory claim asserted

by Plaintiff under 28 U.S.C. § 1367, in that the state and federal claims are derived from a common nucleus of operative facts.

13. This Court has venue under 28 U.S.C. § 1391(b)(1), in that all of the defendants are situated within the State of Ohio and each of them resides within the Southern District of Ohio, and under 28 U.S.C. § 1391(b)(2), in that all of the events described herein have occurred and will transpire within this judicial district. Defendant Strickland exercises his final authority over the other defendants in the seat of Ohio's government, located in Franklin County, Ohio; the lethal injection execution procedures were promulgated by Defendant Collins in Franklin County, Ohio; and Warden Kerns and the execution team members attempted to execute Broom on September 15, 2009, in Scioto County, Ohio, using those same lethal injection procedures; and, unless enjoined, they intend to try to execute him again using those same procedures on September 22, 2009, or perhaps some other date.

14. Broom has exhausted his administrative remedies and/or has done everything required for exhaustion to be deemed complete and/or futile. On September 16, 2009, he timely commenced his administrative remedies under the Ohio Administrative Code ("OAC") § 5120-9-31, as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997(e)(a), by filing a written grievance challenging among other things the defendants' actions on September 15, 2009, in attempting to cause his execution by the use of means that were cruel and which involved the knowing, wanton and foreseeable infliction of severe and excruciating pain.

15. As of this filing, Broom has received no response to his grievance.

16. Because defendant Strickland has set another execution date for Broom on September 22, 2009, a mere 7 days after the botched execution on September 15, 2009, it is impossible for Broom to make any further efforts at exhaustion at this time. In these

extraordinary circumstances, where defendants have themselves made it impossible for Broom to exhaust in a timely manner, the efforts Broom has made must be deemed sufficient and any further exhaustion requirements are excused as impracticable and/or impossible and/or futile.

17. Broom has thus timely and completely exhausted the administrative remedies available to him and/or has done everything required for exhaustion to be deemed complete. Accordingly, Broom has complied with any and all mandatory pre-conditions to the filing of this action in federal court.

## THE PARTIES

18. Plaintiff Romell Broom is a United States citizen and a resident of the State of Ohio. He is currently a death-sentenced inmate in the custody of defendants, and under the control and supervision of the State of Ohio Department of Rehabilitation and Correction, who have him incarcerated now at the Southern Ohio Correctional Facility ("SOCF") in Lucasville, Ohio, under Inmate No. A-187-343. Broom was the subject of an attempted execution by defendants on September 15, 2009, during which he was subjected to extreme and unnecessary cruelty and wanton pain. If his death sentence is not enjoined or otherwise delayed, defendants presently intend to attempt to execute Broom again using the same cruel and wantonly painful procedures they used on Broom on September 15, 2009.

19. Defendant Ted Strickland is, and at all times relevant was, the Governor of the State of Ohio. He is the final executive authority in the state, statutorily and constitutionally responsible for the execution of all sentences of death in Ohio and the manner in which those sentences are performed. He is sued here in his individual and official capacity for the purpose of obtaining declaratory and injunctive relief. He has selected September 22, 2009, as the date for defendants to try again to execute Romell Broom, and he has done so without taking any

reasonable steps or making any reasonable investigation to ensure that the procedures, protocols, practices, and personnel that will be used in the next attempted execution of Romell Broom are sufficient to avoid subjecting Broom again to extreme cruelty and wanton pain.

20. Defendant Terry Collins is, and at all times relevant was, the Director of the State of Ohio Department of Rehabilitation and Correction (DRC), a department of the State of Ohio created and maintained under O.R.C. § 5120. Revised Code § 5120.01 eharges and authorizes Defendant Collins to prescribe and direct the promulgation of rules and regulations for the DRC, including the rules and regulations for the conduct of prison operations and execution procedures. He is sued here in his individual and official capacity for the purpose of obtaining declaratory and injunctive relief.

21. Defendant Phil Kerns is, and at all times relevant was, Warden of the Southern Ohio Correctional Facility at Lucasville (SOCF), a correctional institution of the DRC that was ereated and is maintained under O.R.C. § 5120.05, and which is the prison where sentences of death are executed in the State of Ohio. Under O.R.C. § 5120.38, Defendant Kerns, as the Warden of SOCF, is charged with management of SOCF and the oversight and conduct of operations there. This includes the oversight of training of personnel and implementation of executions carried out there. He is sued here in his individual and official capacity for the purpose of obtaining declaratory and injunetive relief.

22. Defendants John/Jane Doe Numbers One through Twelve are, and were at all times relevant to this action, employees and/or agents of the Ohio Department of Rehabilitation and Corrections, who served and/or currently serve as members of the execution team charged with implementing defendants' lethal-injection execution protocol in a manner designed to cause the death of others in the past, who were charged with the duty to cause Broom's death on

September 15, 2009, and who will be charged with the duty to cause Broom's death on September 22, 2009, or such other date on which any second execution attempt may occur. The identities of these defendants are presently unknown to Broom. Their identities are uniquely within the knowledge of one or more of the named defendants (Gov. Strickland, Director Collins, and/or Warden Kerns) and/or their agents. As their identities become known to Broom, the proper names of the "John/Jane Doe" defendants will be added to this action.

23. Defendants, at all times relevant hereto, were acting in their respective official capacities with respect to all acts described herein, and were in each instance acting under the color and authority of state law. Unless preliminarily and permanently enjoined, the defendants intend to act in their respective official capacities and under the authority of state law by again attempting to execute Broom by utilizing lethal injection methods that have already once violated his constitutional rights and will do so again if permitted to be used again.

## FACTS IN SUPPORT OF ALL CLAIMS

24. Broom incorporates by reference all facts and allegations described throughout this complaint as if fully re-written here.

25. Defendants have adopted procedures, practices and protocols for conducting executions by lethal injection. These procedures, practices and protocols are written and unwritten, and they include the most recent written protocol, Number 01-COM-11, effective as of May 14, 2009, a copy of which is attached hereto as Exhibit 1. The procedures, practices and protocols, both written and unwritten, and including the most recent written protocol adopted by defendants effective May 14, 2009, are hereinafter called collectively "the Subject Execution Protocols."

26. The Subject Execution Protocols were in place on September 15, 2009.

27. The Subject Execution Protocols are administered and carried out by an "execution team" that includes approximately 15-16 members, all of whom are employees of Ohio's prisons, with the vast majority being employed at SOCF. The execution team members are selected and approved by the defendant Warden and/or the "team leader." The execution team includes, broadly speaking, two categories of team members: (1) security, and (2) medical.

28. The "security" members are by far the vast majority of the team, and their principal functions are security and transport. The "medical" members are responsible for, among other things, obtaining and maintaining IV access in the inmate's body, delivering the lethal drugs through the IV's, and (along with the defendant Warden and the "team leader") monitoring the inmate once the drugs are started to determine if the drugs are being properly delivered and are having their desired effect throughout the process until death. There are only 3-4 medical team members, and none of the medieal team members are physicians. They are, instead, para-medical professionals such as phlebotomists and emergency medical technicians.

29. The execution team that was in place on September 15, 2009, and which attempted to carry out Broom's execution on that date, is hereinafter called "the Subject Execution Team."

30. Defendants Strickland, Collins and/or Kerns are ultimately responsible for what is contained in the Subject Execution Protocols. They have the authority to make changes to the Subject Execution Protocols at any time and with no need for any legislative or other approval.

31. The composition of the Subject Execution Team is determined by defendants Strickland, Collins and/or Kerns. They have the absolute authority to change the composition of the execution team, and could, if they wanted to, require a higher level of qualification, training, and competence for medical team members.

32. Broom is under a sentence of death, and he has been since 1985.

33. For many years, defendants have known that they would one day be called upon to execute Broom by utilizing a method of lethal injection.

34. They have also known for years that the method of lethal injection they have chosen to use – i.e., the Subject Execution Protocols -- was going to require them to obtain access to Broom's veins with intravenous ("IV") needles, install the accompanying IV sheathes into the accessed veins, attach receptacles to the IV's to keep the veins "open" so that the fatal drugs can be delivered to the body, and monitor and maintain that IV access throughout the process until death. The process of obtaining and maintaining proper "IV access" is a core and crucial part of any execution the defendants conduct. Indeed, the execution process begins when the designated defendant execution team members enter the inmate's holding cell, some 15 feet from the death chamber, in order to access the veins and insert the IV's. If execution team members are not able to obtain and maintain proper IV access throughout the execution, the condemned inmate will be subjected to a substantial risk of serious harm, because the anesthetic drug (the first of the three) likely will not be delivered into the circulatory system in an adequate dose to ensure adequate anesthesia throughout the process.

35. On April 22, 2009, the Ohio Supreme Court scheduled Broom's execution for September 15, 2009, at 10:00 a.m. Defendants thus knew for some 5 months before Broom's execution date that he was scheduled to be executed on September 15, 2009.

36. Broom arrived at SOCF for his execution on Monday morning, September 14, 2009. He was transported to SOCF by defendant John Does, members of the execution team.

37. Upon his arrival at SOCF, Broom was immediately taken to the holding cell in the death house, where he was to spend the rest of his time until the execution on September 15,

2009. At all times, he was watched by defendant members of the execution team, who are stationed immediately outside his small holding cell around the clock.

38. Broom's execution was scheduled to begin at 10:00 a.m. At some point prior to the execution, an examination of Broom's veins was undertaken by prison staff and it was determined that the right arm was amenable to IV access, and that the left arm would likely be more difficult or impossible.

39. Because of pending appeals, the start of the execution was delayed from 10:00 a.m. until approximately 1:00 p.m.

40. At approximately 1:00-1:30 p.m., the exact time is not clear, the defendant Warden came to the front of Broom's cell and read the death warrant to Broom. Thereafter, two medical members of the execution team, along with 4 or more security members, entered Broom's cell to begin the execution. It was discovered that the drugs to be used in the execution were old and the syringes holding the drugs had to be discarded and new drugs prepared.

41. The medical members were unable to get access to Broom's veins. They tried numerous times and then took a break. They then tried numerous times again. They still could not gain access to a vein that would allow for IV insertion. During this process, Broom was subjected to extreme cruelty and to wanton and unnecessary pain. He was visibly in pain at various times, was observed to be wincing, and, eventually, was crying because of the pain and trauma that was inflicted upon him. The execution team members, as required by the Subject Execution Protocols and as directed by defendants Strickland, Collins and Kerns, made repeated and persistent attempts to get access to Broom's veins by poking him with IV needles again and again, at least some 14-18 times and maybe more, and they continued to do so when it was or

should have been obvious that their repeated efforts to obtain access were futile and were causing Broom severe and excruciating pain and severe emotional distress.

42. The process was taking so long that his counsel at the prison (Adele Shank) contacted counsel in Cleveland, Ohio (Tim Sweeney). They ultimately decided to prepare a request for relief, which was prepared and then emailed at approximately 4:00 p.m., to Ohio Supreme Court Chief Justice Thomas Moyer and Governor Ted Strickland asking them to stop the execution on the grounds that Broom was being subjected to cruel and unusual punishment.

43. The defendants' execution attempts on Broom continued for approximately two and one-half hours, perhaps longer, and the process was only stopped when defendant Strickland issued what he called a "reprieve" at approximately 4:24 p.m. EST.

44. The reprieve was granted to "allow the Department to recommend appropriate next steps" to the governor. Neither Broom nor his counsel has been notified of what if any "next steps" are to be taken.

45. During the time the defendants were attempting to execute Broom, he was denied access to his attorney who was present at SOCF. When it became clear the defendants could not obtain venous access despite repeated attempts, and that Broom was in severe pain and emotional distress, Broom demanded that his attorney, Adele Shank, be allowed to watch the further attempts defendants were making to access his veins. This request was denied. In denying the request, a prison lawyer told Ms. Shank that the Subject Execution Protocols prohibit the inmate to have contact with his lawyers after the execution process has started, as this process obviously had. Counsel repeatedly asked to be allowed to speak with Broom and was repeatedly denied the opportunity to do so.

46. In halting the failed execution attempt and issuing a reprieve, defendant Strickland ordered that the defendants would attempt to execute Broom again in one week, on September 22, 2009, at the same place.

47. After the execution failed on September 15, 2009, the defendants cruelly ordered that Broom remain at SOCF, where he is now being housed among his executioners while he waits for them to attempt to execute him again on September 22, 2009.

48. Defendants were not prepared on September 15, 2009, to carry out Broom's execution in a manner that complied with constitutional standards or that complied with Ohio's statutory requirement of a quick and painless death.

49. Although the defendants knew or should have known that Broom's veins would present challenges for the IV access part of their execution process, the defendants failed to properly prepare and sufficiently train the execution team to access Broom's veins in a way that was not inhumane and cruel. The execution team was not sufficiently prepared, was not sufficiently trained, and lacked the necessary competence to properly access Broom's veins and to do so in a way that was not inhumane and cruel.

50. Broom has previously placed defendants on notice, as early as March 2007, that he believed the defendants' adoption and use of the Subject Execution Protocols presented a substantial risk that he would be subjected to severe and wanton pain during his execution, and that this substantial risk could be avoided with reasonable and readily available alternatives. Defendants ignored Broom's complaints and did nothing to address them.

51. Defendants also knew long before September 15, 2009, from their prior experiences conducting lethal injection executions in Ohio with the Subject Execution Protocols and the Subject Execution Team, that their use of the Subject Execution Protocols has already

caused inmates to experience severe and wanton pain during executions. These prior executions include, but are not limited to, the execution of Joseph Clark in May 2006, and the execution of Christopher Newton in May 2007, during which both inmates suffered severe, wanton, and unnecessary pain in violation of the inmate's constitutional and statutory rights. Clark's and Newton's executions differed from Broom's in that defendants eventually were able to set IVs in Clark's and Newton's arms, so, unlike Broom, they were not able to survive the harrowing experience at the hands of the defendants and their Subject Execution Protocols. The defendants have demonstrated a pattern of inexcusable neglect and reckless indifference to the constitutional rights of the condemned inmates. Defendants' pattern of trouble gaining IV access is significant because IVs that are set after numerous failed attempts are less likely to be properly set in the vein, thus creating a substantial risk that the drugs will not be successfully delivered into the circulatory system and that the inmate will suffer serious harm.

52. And, despite their actual knowledge of these recent examples of executions that actually caused inmates to suffer severe and wanton pain, and despite Broom's prior specific complaints that the defendants' Subject Execution Protocols needlessly expose him to a substantial risk of severe pain, the defendants did nothing on September 15, 2009, to protect Broom from the known and foreseeable risks of severe pain that he had warned them about. They were deliberately indifferent to the risks. The injuries he suffered on that date, and is contiuuing to suffer, were foreseeable and avoidable.

## FIRST CLAIM FOR RELIEF

## FIFTH, EIGHTH AND FOURTEENTH AMENDMENT CLAIMS THAT ANY FURTHER ATTEMPTS TO EXECUTE ROMELL BROOM WOULD VIOLATE THE CONSTITUTION

53. Broom incorporates by reference all facts and allegations described throughout this complaint as if fully re-written herein.

54. The defendants have tried to execute Broom once and have failed.

55. Broom is blameless for their failure. He was cooperative in the process and did nothing to obstruct or delay the process or to cause it to fail.

56. Defendants bear all blame for their failure. The defendants were unable to successfully complete Broom's execution after it was started because, among other failures to be developed in discovery:

- They failed to have properly trained and qualified personnel to perform thc IV insertions on Broom's body.

- They failed to recognize that each inmate presents unique issues of IV access and thus failed to prepare and train for the unique issues Romell Broom presented.

- They failed to have sufficient and proper procedures in place to address the manner in which IV access would be obtained on Broom in the event the peripheral IV sites could not be established in a reasonable amount of time, and they failed in this respect even though their own expert in the "Cooey" litigation had warned them as recently as March 2009 that their failure to address this issue in the Subject Executions Protocols is a serious deficiency in their protocol.

- They failed to have any contingency plans in place to address a known and recurring problem, i.e., difficult peripheral IV access, even though they have had at least two other executions in the past three years (Clark and Newton) during which access problems occurred and caused the subject inmates to experience severe and wanton pain during their executions.

- The defendants' flawed protocols called for the team members to take as much time as they needed, even as long as 14 hours, and by thus having no known time limit for

attempting peripheral IV access, let alone no reasonable time limit, the defendants placed their team members in such an oppressively stressful situation that, when the inevitable problems occurred, a policy of responding to those problems by resorting solely to repeated and persistent attempts at IV access for as much time as needed was doomed to fail and was guaranteed to cause Broom severe pain in the proeess.

57. During the defendants' failed execution attempt on Broom, they subjected him to prolonged and excruciating physical pain and suffering and to severe emotional distress.

58. The pain, suffering and distress to which Broom was subjected on September 15, 2009, went well beyond that which is tolerated by the Constitution. It was a form of torture that exposed Broom to the prospect of a slow, lingering death, not the quick and painless one he was promised and to which he is constitutionally entitled if he is going to be executed by defendants. In the circumstances of this case, the pain, suffering and distress were deliberately and intentionally inflicted upon Broom, and the fact that he would suffer such pain, suffering and distress was completely foreseeable to defendants, as opposed to being the result of an "accident," or an "innocent misadventure," or an "isolated mishap." It was unnecessary pain, suffering and distress.

59. What happened to Broom on September 15, 2009, at defendants' hands and under their direction, was inhuman and barbarous. It exhibited cruel indifference to Broom's rights. It should not be permitted to happen again.

60. The trauma inflicted upon Broom has continued after the attempted execution. He has been forced by defendants to remain at SOCF, and is thus forced to live around the very executioners who tried to take his life once and will try again a second time unless enjoined. Defendants have unreasonably permitted Broom only <u>one week</u>, until September 22, 2009, to

recover from the injuries and trauma he has sustained, and to be prepared to again face the same flawed and unconstitutional procedures and protocols as administered by the same unqualified personnel. Moreover, defendants plan to go forward again in only one week, when they know or should know that, because of the trauma they inflicted upon Broom on September 15, 2009, he will not be in any condition, physically or mentally, for the execution to proceed on September 22 without there being a repeat of the same, or worse, problems in establishing and maintaining IV access. They have thus knowingly decided to make a second attempt at Broom's execution in circumstances that have made it highly probable that this second attempt will be worse than the first.

61. Because the defendants have already subjected Broom to the pain, suffering and distress he endured during the attempted execution on September 15, 2009, and they are continuing to subject him to additional pain, suffering and distress by ordering him to go through the same process again in one week, it would violate the Eighth and Fourteenth Amendments for the defendants to make any further attempts to execute Broom by any means. Any further attempts at Broom's execution may not constitutionally take place after the experience through which he has passed.

62. Any attempt to execute Broom a second time by any means would also violate the Fifth Amendment's guarantee against Double Jeopardy as applied to the States through the Fourteenth Amendment. In pertinent part, the Fifth Amendment states "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb." A second attempt to execute Broom would violate the Fifth Amendment.

63. Broom is entitled to temporary, preliminary and permanent injunctive relief against any further attempts by defendants to attempt to execute him again by any means.

64. He is also entitled to such other relief as may be appropriate in his favor.

## SECOND CLAIM FOR RELIEF

## EIGHTH AND FOURTEENTH AMENDMENT CLAIMS THAT ANY FURTHER EXECUTION ATTEMPTS UPON BROOM MAY NOT OCCUR UNLESS AND UNTIL DEFENDANTS FIX THEIR FLAWED AND BROKEN PROCEDURES AND PROTOCOLS

65. Broom incorporates by reference all facts and allegations described throughout this complaint as if fully re-written herein.

66. Broom brings his second claim in the alternative to his first claim.

67. Even if it is constitutionally permissible for defendants to seek to execute Broom again (whieh Broom does not concede), they certainly may not attempt to do so using the same flawed and constitutionally deficient Subject Execution Protocols that were used on September 15, 2009.

68. Doing so would violate Broom's rights under the Eighth and Fourteenth Amendments to be free from cruel and unusual punishment.

69. It would also violate Broom's rights to substantive due process through the Fourteenth Amendment because it would not be the "quick and painless" death that the Ohio statute requires Broom to receive.

70. Broom believes and therefore alleges that defendants intend, on September 22, 2009, or some later date, to attempt to again execute Broom using the same Subject Execution Protoeols and Subject Execution Team which they unsuccessfully used on September 15, 2009.

71. Any changes defendants have made or may be intending to make to the Subject Execution Protocols or Subject Execution Team, in advance of their next attempt to execute Broom, have not been provided to Broom nor have they been made public. Broom and the public

are entitled to know what if any new procedures, practices or protocols defendants may be intending to use during any second execution attempt they make on Broom.

72. Based upon the defendants' poor track record of repeated recent flawed executions, during which the same problems have been experienced again and again without any adequate remedies being adopted to address those problems, Broom has absolutely no confidence that these defendants are capable of making changes to their procedures, practices, protocols and/or personnel that will prevent Broom from again being subjected to severe and wanton pain. The defendants are certainly incapable of doing so in the paltry one week's time that they have allowed themselves until they attempt to execute Broom again, and they are also incapable of providing, in such a short amount of time, the necessary and sufficient training to the execution team with respect to any such new or different procedures, practices, protocols and/or personnel.

73. Any changes defendants have made or may be intending to make to the Subject Execution Protocols or Subject Execution Team, in advance of their next attempt to execute Broom, are insufficient to prevent the same failed results and are insufficient to protect Broom from again being subjected to severe and wanton pain during his execution.

74. The defendants' Subject Execution Protocols are constitutionally deficient in material respects, including but not limited to those respects set forth earlier in this Complaint. Their use again upon Broom would expose him to substantial and foreseeable risks of severe and wanton pain during the execution process, severe pain that would equal or exceed that to which he was already subjected once on September 15, 2009.

75. Despite due notice of the constitutional deficiencies with the defendants' Subject Execution Protocols and with the Subject Execution Team, defendants have failed and refused,

and are persisting in their failure and refusal, to adopt lethal injection procedures, practices, customs, and methods for the second attempted execution of Romell Broom that comply with the Constitution.

76. These substantial risks of severe pain can be avoided. Less painful and even humane means for carrying out an execution by lethal injection do exist. Defendants have refused to adopt a means of execution that will not subject Broom to cruel and unusual punishment and defendants will persist in that refusal unless enjoined by this court.

77. Broom is entitled to temporary, preliminary and permanent injunctive relief against any further attempts by defendants to try to execute him again using their flawed Subject Execution Protocols and Subject Execution Team, and also against doing so using any revised protocols and procedures for lethal injection, all until further order of this Court.

78. He is also entitled to such other relief as may be appropriate in his favor.

## THIRD CLAIM FOR RELIEF

## EIGHTH AND FOURTEENTH AMENDMENT CLAIMS THAT A FURTHER EXECUTION ATTEMPT UPON BROOM A MERE ONE WEEK AFTER THE FAILED ATTEMPT WOULD BE UNCONSTITUTIONALLY CRUEL

79. Broom incorporates by reference all facts and allegations described throughout this complaint as if fully re-written herein.

80. Broom brings his third claim in the alternative to his first claim.

81. Even if it is constitutionally permissible for defendants to seek to execute Broom again (which Broom does not concede), they certainly may not attempt to do so again a mere one week after their first failed attempt.

82. Doing so would violate Broom's rights under the Eighth and Fourteenth Amendments to be free from cruel and unusual punishment.

83. It would also violate his rights to substantive due process through the Fourteenth Amendment because it would not be the "quick and painless" death that the Ohio statute requires him to receive.

84. The defendants' actions on September 15, 2009, caused Broom to sustain severe physical and mental trauma. This includes trauma to his veins and surrounding tissue.

85. He needs time to heal. One week is nowhere near enough time for Broom's veins to recover from the injuries he has sustained. Given that his peripheral venous system was extremely tenuous, it is highly likely that, even if his veins were theoretically accessible on September 15, they will be completely inaccessible to any practitioner, regardless of their expertise, on September 22. Further, unless he undertakes a vigorous exercise program to condition and enlarge his veins, Broom's peripheral venous system will never improve on its current meager status. In all likelihood, further attempts by the same IV team on September 22 would only represent a futile infliction of pain and emotional distress on Broom and psychological stress on the prison's professional staff. Even if a peripheral IV catheter were placed, the likelihood of it failing during the execution, as occurred with Joe Clark in 2006, is unaeceptably high.

86. Broom should not be subjected to execution again so soon after the first failed attempt. Should defendants attempt to execute Broom again without first allowing time for Broom's physical and emotional injuries to heal, they will knowingly be creating a substantial and unnecessary risk that the second attempt will be equally and perhaps more wantonly painful than the first attempt. This substantial risk of severe pain is easily avoided by delaying any future attempt at Broom's execution for a reasonable amount of time, which Broom contends is at least 6 months.

87. Broom is entitled to temporary, preliminary and permanent injunctive relief against any further attempts by defendants to try to execute him again on September 22, 2009, or any other date that is not at least 6 months beyond the date of the first failed attempt.

88. He is also entitled to such other relief as may be appropriate in his favor.

## FOURTH CLAIM FOR RELIEF

### SIXTH AND FOURTEENTH AMENDMENT CLAIMS THAT A FURTHER EXECUTION ATTEMPT UPON BROOM WHILE THE DEFENDANTS' EXECUTION PROCEDURES DENY REASONABLE ACCESS TO COUNSEL THROUGHOUT THE DAY OF EXECUTION AND ALL ACCESS TO COUNSEL WHEN EXECUTION PROCEDURES GO WRONG IS UNCONSTITUTIONAL

89. Broom incorporates by reference all facts and allegations described throughout this complaint as if fully re-written herein.

90. Broom was unable to meet with his counsel in a setting that protected the attorney-client privilege at any time on the day of execution even though he had legal proceedings pending and had other confidential matters to discuss with counsel. The fact that defendants are planning to carry out an imminent execution does not allow them to ignore the right to confidential attorney client communication.

88. When it became clear that the execution process was going wrong, the defendants' refusal to allow Broom access to counsel caused the cruel process to continue longer than it otherwise would have.

89. Defendants' failure to allow counsel to bring a cell phone to the death house and refusal to allow counsel to use a prison phone at the death house further delayed efforts to stop the execution gone wrong.

90. The denial of access to counsel exacerbated Broom's injury and torture by delaying counsel's efforts to stop the process. It further denied Broom the opportunity to consult with counsel and to know that efforts were being made on his behalf.

91. Broom is entitled to temporary, preliminary, and permanent injunctive relief against any further attempts by defendants to try to execute him again on September 22, 2009, or any other date, unless or until provisions have been made to insure that he has access to confidential consultation with his lawyers, that he has access to counsel if the execution process begins to go wrong, and he through his counsel has access to assistance including from the courts by providing for the use of telephones from the death house.

92. He is also entitled to such other relief as may be appropriate in his favor.

**PRAYER FOR RELIEF**

A. Romell Broom requests that this Court grant him injunctive relief by granting temporary, preliminary, and permanent injunctions barring defendants from executing Broom by any means, all for the reasons set forth in the first count of this Complaint and to be more fully developed in discovery.

B. In the alternative, Broom requests that this Court grant him injunctive relief by granting temporary, preliminary and permanent injunctions against any further attempts by defendants to execute Broom using the same flawed Subject Execution Protocols and Subject Execution Team that were used on September 15, 2009, and also against doing so using any revised protocols and procedures for lethal injection, all until further order of this Court, and for the reasons more fully set forth in the second count of this Complaint and to be developed more fully in discovery.

C. At the very least, Broom requests that this Court grant him injunctive relief by granting temporary, preliminary and permanent injunctions against any attempt by defendants to execute Broom on September 22, 2009, or on any other date that is not at least 6 months beyond the date of the first failed attempt, all until further order of this Court, and for the

reasons more fully set forth in the third count of this Complaint and to be developed more fully in discovery.

D. Broom requests that this Court grant him injunctive relief by granting temporary, preliminary and permanent injunctions against any further attempts by defendants to execute Broom until arrangements have been made to insure access to confidential attorney-client meetings, access to counsel when the execution process appears to be going wrong, and that he has access through counsel to courts and other assistance by allowing cell phones or use of the prison telephones in the death house.

E. Broom requests that this Court enter such declaratory and other relief in favor of Broom as may be appropriate.

F. Broom requests that this Court grant him reasonable attorney fees under 42 U.S.C. § 1988 and the laws of the United States.

G. Broom requests that this Court grant such other and further relief in favor of Broom as it deems just and proper.

Respectfully Submitted,

Timothy F. Sweeney, Esq. (0040027)
LAW OFFICE OF TIMOTHY FARRELL SWEENEY
The 820 Building
820 West Superior Ave., Suite 430
Cleveland, Ohio 44113-1800
(216) 241-5003

S. Adele Shank, Esq. (0022148)
LAW OFFICE OF S. ADELE SHANK
3380 Tremont Road, 2nd Floor
Columbus, Ohio 43221-2112
(614) 326-1217

(614) 326-1028 (fax)
shanklaw@att.net

Counsel for Romell Broom

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was filed served by email to Charles Wille, counsel for Defendants, at charles.wille@ohioattorneygeneral.gov this 18th day of September, 2009, and will also be hand-delivered at a hearing later today.

Timothy F. Sweeney, Esq. (0040027)
LAW OFFICE OF TIMOTHY FARRELL SWEENEY