## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**ROMELL BROOM,**

       **Plaintiff,**

            **v.**

**TED STRICKLAND, et al.,**

       **Defendants.**

                          **Case No. 2:09-cv-823**
                          **JUDGE GREGORY L. FROST**
                          **Magistrate Judge Mark R. Abel**

## OPINION AND ORDER

This matter is before the Court for consideration of a motion to dismiss (Doc. # 42) filed by Defendants, a memorandum in opposition (Doc. # 44) filed by Plaintiff, Romell Broom, and a reply memorandum (Doc. # 46) filed by Defendants.  For the reasons that follow, this Court finds the motion well taken in part and *sua sponte* dismisses without prejudice part of Claim One and all of Claim Two.

### I.  Background

Plaintiff is one of numerous Ohio death-row inmates who are challenging the State's execution protocol and practices in this 42 U.S.C. § 1983 action.  Following an unsuccessful attempt by the State of Ohio to execute Plaintiff on September 15, 2009, Plaintiff filed this action.  After Ohio adopted a new execution protocol, the Court permitted the filing of a January 8, 2010 amended complaint.  (Doc. # 40.)  Defendants subsequently filed a motion to dismiss that pleading.[1]  (Doc. # 42.)  The parties have completed briefing on the motion, which is ripe for

---

[1]  The moving defendants are Ted Strickland, Terry Collins, Phillip Kerns, and anonymous execution team members.  (Doc. # 42, at 1.)

disposition.

## II.  Discussion

### A.  Standard Involved

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires an assessment of whether the party asserting a claim has set forth a claim upon which the Court may grant relief.  This Court must construe the pleading in favor of the party asserting a claim, accept the factual allegations contained in that party's pleading as true, and determine whether the factual allegations present a plausible claim.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007).  The Supreme Court has explained, however, that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  Moreover, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 1950.

To be considered plausible, a claim must be more than merely conceivable.  *Bell Atlantic Corp.*, 550 U.S. at 556; *Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007).  What this means is that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 129 S. Ct. at 1949.  The factual allegations of a pleading "must be enough to raise a right to relief above the speculative level . . . ."  *Twombly*, 550 U.S. at 555.  *See also Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291,

2

295 (6th Cir. 2008).

   **B. Analysis**

      **1. Claims One & Two**

The State of Ohio unsuccessfully attempted to execute Plaintiff on September 15, 2009. Plaintiff asserts in Claim One that the failed attempt constituted torture and that a second attempt at executing him would also constitute cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments.  Plaintiff then asserts in Claim Two that a second attempt at executing him would violate the Fifth and Fourteenth Amendments.

Defendants move for dismissal of a portion of Claim One on the grounds that speculation or proof of prior or even future medical negligence cannot render a facially constitutional protocol unconstitutional.  The Sixth Circuit has agreed, and this Court recognized that holding in its August 12, 2010 Opinion and Order in another execution protocol case.  (Doc. # 801 in 2:04-cv-1156.)  This Court incorporates by reference that Opinion and Order, which proves dispositive of not only a portion of Claim One, but also of many of the other claims or parts of claims discussed below.  Thus, to the extent Claim One asserts an Eighth Amendment claim predicated solely upon the first execution attempt or based upon the current protocol presenting an unconstitutional risk of cruel and unusual punishment (outside the second-attempt context), such claims are foreclosed.

More clear is that Plaintiff intends Claim One to present the argument that it would be cruel and unusual punishment for Ohio to engage in a second execution attempt.  This aspect of the claim necessarily draws on the first execution attempt, but it does not attack the protocol *per se*.  Rather, the claim is more accurately restated as that any additional execution attempt made

3

under any protocol is prohibited by the Eighth Amendment. Defendants move for dismissal on the grounds that the United States Supreme Court has held that the Eighth Amendment does not preclude an inmate's execution after a previous attempt has failed.

In making this argument, Defendants direct this Court to *Louisiana ex rel. Francis v. Resweber*, 329 U.S. 459 (1947), as supporting for the proposition that there is no constitutional bar to multiple execution attempts. But as Plaintiff correctly points out, the Due Process Clause case of *Resweber* is a plurality decision in which there were not five justices who found that a second execution attempt did not offend the Eighth Amendment. Four justices found no cruel and unusual punishment (after assuming without deciding that the Fourteenth Amendment encompassed the prohibition), four disagreed, and the fifth rejected application of the Eighth Amendment standard to the dispute. Writing in a separate concurrence, Justice Frankfurter opined that "the penological policy of a State is not to be tested by the scope of the Eighth Amendment and is not involved in the controversy which is necessarily evoked by that Amendment as to the historic meaning of 'cruel and unusual punishment.' " *Id.* at 470 (Frankfurter, J., concurring).

There is no doubt that the Eighth Amendment applies to Plaintiff's situation. *See Robinson v. California*, 370 U.S. 660 (1962). To hold that Plaintiff's claim is not plausible based on *Resweber* would thus be an erroneous application of a case that has shown its age in at least one relevant, core aspect. Over sixty years after *Resweber*, another Supreme Court plurality recognized that under an Eighth Amendment analysis, a series of abortive execution attempts could potentially indeed present an unconstitutional violation. *Baze v. Rees*, 553 U.S. 35, 50 (2008) (plurality). Thus, *Resweber* does not mandate dismissal of the no-multiple-attempt

4

component of Claim One.

The foregoing does not necessarily mean that this last portion of Claim One survives.   In this remaining portion of Claim One, Plaintiff seeks to bar his execution on the grounds that it would constitute cruel and unusual punishment under the Eighth Amendment.  In Claim Two, he seeks to bar his execution on the grounds that it would constitute double jeopardy under the Fifth Amendment.  Defendants attack these claims as foreclosed by precedent,[2] while also stating in their reply memorandum that the "double jeopardy claim crosses the line into habeas corpus, as [Plaintiff] claims that the State is now precluded from ever executing him.  Thus [Plaintiff] seeks to establish unlawfulness that would render his death sentence invalid, and, hence, his claim is not cognizable under Section 1983."  (Doc. # 46, at 6.)

As a threshold matter, this Court notes that Defendants have again raised an argument for dismissal in their reply memorandum that they failed to raise as part of their motion.  *See, e.g.,* Doc. # 801, at 19-20 in 2:04-cv-1156.  But unlike in previous matters, Defendants' lapse does not warrant disregarding the argument suggested because in this instance, the Court may *sua sponte* raise an issue of subject matter jurisdiction.  Thus, this Court turns to the issue of whether the remaining portion of Claim One and the entirety of Claim Two are even cognizable under § 1983.

The United State Supreme Court has addressed whether an inmate can challenge the methods by which a state seeks to execute him or her under § 1983.  *Hill v. McDonough*, 547

---

[2]  Again citing to the plurality opinion in *Resweber*, which found "no double jeopardy . . . which can be said to amount to a denial of federal due process" in a state pursuing a second execution attempt, Defendants move to dismiss the double jeopardy claim on the grounds that the Fifth Amendment does not preclude a second execution attempt after a failed first attempt. *Resweber*, 329 U.S. at 463.

U.S. 573 (2006); *Nelson v. Campbell*, 541 U.S. 637 (2004).  In holding that a challenge to a lethal injection procedure is indeed cognizable under § 1983, the Supreme Court has distinguished between challenges to *whether* a state can execute an inmate and *how* the state can execute the inmate.  In *Hill*, for example, the Supreme Court stated that "Hill's challenge appears to leave the State free to use an alternative lethal injection procedure.  Under these circumstances a grant of injunctive relief could not be seen as barring the execution of Hill's sentence."  *Hill*, 574 U.S. at 581-82.  In contrast, Plaintiff's challenge here would leave Ohio unable to use either option under its execution protocol and a grant of injunctive relief would prevent Ohio from implementing Plaintiff's sentence.  A challenge that would prevent a State from implementing a sentence is deemed a challenge to the facts of the sentence itself.  *Id.* at 580-81 ("Absent a finding that the challenged procedure was necessary to the lethal injection, . . . injunctive relief would not prevent the State from implementing the sentence.  Consequently, the suit as presented would not be deemed a challenge to the fact of the sentence itself. ").  And a challenge to a sentence falls within habeas.  *Id.* at 579 (" 'Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus.' " (quoting *Muhammad v. Close*, 540 U.S. 749, 750 (2004) (per curiam))).

Plaintiff's claims seeking to bar his execution are therefore akin to an inmate's suit for damages that would necessarily imply an invalid sentence, and the Supreme Court has held that "prisoners' suits for damages can be barred from proceeding under § 1983 when a judgment in the prisoner's favor necessarily implies the invalidity of the prisoner's sentence."  *Id.* at 580.  Even more to the point, the Supreme Court has explained that "in a State where the legislature has established lethal injection as the method of execution, 'a constitutional challenge seeking to

permanently enjoin the use of lethal injection may amount to a challenge to the fact of the sentence itself.' " *Hill*, 547 U.S. at 579 (quoting *Nelson*, 541 U.S. at 644)).  Plaintiff's no-second-attempt claims amount to just such challenges.

In this instance, "§ 1983 must yield to the more specific federal habeas statute, with its attendant procedural and exhaustion requirements." *Nelson*, 541 U.S. at 643.  The end result is that Plaintiff's claims "fall within the 'core' of habeas corpus and are thus not cognizable when brought pursuant to § 1983." *Id.*  This means that Plaintiff's Fifth Amendment and Eighth Amendment no-multiple-attempts challenges are not properly before this Court.  Defendants concede that habeas presents the proper vehicle to address the constitutional issues arising from the failed execution attempt and Ohio's intent to try again, and they are correct.  The proper mechanism in which to assert both claims is a habeas corpus action and not under § 1983.

Because Plaintiff's amended complaint also contains claims that do not similarly fall within the province of a habeas action and because this would not constitute Plaintiff's first habeas action, thus necessitating appellate permission to proceed, severance instead of mere reclassification is the appropriate course of action.  *Hill*, 547 U.S. at 582 ("If the relief sought would foreclose execution, recharacterizing a complaint as an action for habeas corpus might be proper.").  The Court recognizes that this analysis presents the odd situation of a litigant potentially pursuing a habeas action to bar his execution while concurrently pressing forward with a § 1983 case that addresses the details of how another execution attempt could be made.  But the unusual circumstances Plaintiff's situation and the law as explained by the higher courts place Plaintiff into this unusual position.

The Court therefore **GRANTS** the motion to dismiss those components of Claim One

attacking the former and current execution protocols but **DENIES** the motion to dismiss the component of Claim One targeting whether another execution attempt following the failed attempt constitutes cruel and unusual punishment.  This Court also **DENIES** the motion to dismiss Claim Two, **SEVERS** the no-multiple-attempts aspect of Claim One and all of Claim Two pursuant to Federal Rule of Civil Procedure 21, and **DISMISSES** said claims without prejudice.

### 2. Claim Three

In Claim Three, Plaintiff alleges that even if it is constitutional for Ohio to engage in a second attempt at execution, it is unconstitutional for the State to employ its prior or current protocols in such an effort.  Part of this catch-all claim is redundant.  For example, Plaintiff avers that the current protocol is unconstitutional because it fails to provide a mechanism for confidential attorney-client communication (including during the execution), fails to permit counsel to be present at the execution without Plaintiff having to designate counsel as a witness under Ohio Revised Code § 2949.25(A)(5), and fails to provide telephonic access to the courts and the governor during the execution.  Plaintiff raises all of these concerns as his fifth claim for relief.  Although repetitive, this aspect of the third claim does not warrant dismissal for the reasons set forth in the Court's August 12, 2010 Opinion and Order.  (Doc. # 801, at 16-18 in 2:04-cv-1156.)

Most of the remaining portions of Plaintiff's third claim do not fare as well.  Plaintiff asserts that use of the prior and current protocols constitute cruel and unusual punishment under the Eighth and Fourteenth Amendments and that they violate his Fourteenth Amendment due process rights related to interests set forth in Ohio Revised Code § 2949.22.  Based on the

reasoning set forth in the Court's August 12, 2010 Opinion and Order, as well as the Sixth

Circuit's reasoning in *Cooey (Beuke) v. Strickland*, 604 F.3d 939, 944-45 (6th Cir. 2010), this

Court must conclude that binding precedent either forecloses or renders implausible on these

facts the remaining components of Claim Three.  (Doc. # 801, at 3-16 in 2:04-cv-1156.)

 In reaching this conclusion, the Court is cognizant that Plaintiff has attempted to place

himself into a category of inmates who can present a individualized or particularized claim that

distinguishes them from those individuals who have asserted simply a general challenge to the

prior or current protocol and procedures.  This attempt at self-classification is important because

it informs the equal protection component of Claim Three.

 Plaintiff asserts that the protocol generally and specifically violates his Fourteenth

Amendment equal protection rights.  Pointing to difficulties with vein access evident in the first

execution attempt, Plaintiff attempts to plead facts indicating that this prior experience was not

simply an unpleasant fluke or misadventure.  Plaintiff asserts in his amended complaint that

> [t]here *may* also exist risks and issues unique to Broom and his veins that contributed
> at least in part to the defendants' failure to obtain and maintain IV access on Broom
> on September 15, 2009, and these issues, *to the extent they exist*, would continue to
> prevail on any future execution date.  Allowing Broom to be subjected to a wantonly
> painful execution process by failing to take into account his unique physical
> circumstances would and has denied him Equal Protection as well as Due Process of
> Law.

(Doc. # 40 ¶ 92.)  Such speculative pleading arguably falls short of meeting the mandated

standard of pleading factual content that allows this Court to draw the reasonable inference that

Defendants have violated or will violate the Constitution as alleged.  *Iqbal,* 129 S.Ct. at 1949

("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged.").  Rather,

9

Plaintiff's these-facts-may-exist pleading arguably constitutes the sort of "sheer possibility" of unconstitutional conduct that the Supreme Court has held insufficient to survive a Rule 12(b)(6) motion. *Id.*

It is important to note that Defendants do not argue that the foregoing pleading is insufficient and consequently invalidates the core premise of Plaintiff's argument as to why his equal protection claim survives dismissal. Rather, as Plaintiff emphasizes, Defendants only move for dismissal on the asserted inapplicability of the Equal Protection Clause to inmates. Plaintiff then explains why an inmate does have equal protection rights, a contention that this Court has previously accepted. Because Defendants do not attack whether the pleading asserts facts that place Plaintiff within the class he identifies as potentially applicable to himself, this Court need not and will not analyze whether the amended complaint is deficient in this regard. To do so would be to address an issue that Defendants have not raised as a ground for dismissal (and one that does not involve subject matter jurisdiction).

The Court notes, however, its concern over the sufficiency of the equal protection pleading. Plaintiff's own briefing characterizes his equal protection claim as follows:

> By failing to provide for the unique physical characteristics of each condemned prisoner, some receive quick and painless executions that comport with Ohio law and the Eighth Amendment while others do not. Broom was denied Equal Protection when the State of Ohio failed to provide the quick and painless death purportedly provided to others.

(Doc. # 44, at 28.) Such an equal protection claim does *not* target apparent deviations from the protocol and procedures as equal protection violations as other inmates have alleged in related litigation. Instead, Plaintiff's theory of an equal protection violation is that he was and will be treated differently than other death row inmates during an execution because of unique physical

10

characteristics; at the same time, however, Plaintiff's factual allegations are that those unique physical conditions and their associated risks "may" exist and would be problematic "to the extent they exist." An arguably reasonable end result would be that, while arguing that equal protection covers his claim and that the factual allegations of his pleading are not at issue, the speculative factual allegations of Plaintiff's amended complaint would remove his claim from the scope of the Fourteenth Amendment protections he seeks to invoke. In any event, the point is a non-dispositive one here because in arguing only against *any* theoretical application of equal protection, Defendants overreach and fail to attack application of equal protection rights based on the facts pled. Defendants have thus failed to target a possibly persuasive argument that might have been supported by Plaintiff's limiting characterization of his own claim. Defendants' argument for dismissal of the equal protection component therefore fails.

This Court **GRANTS** the motion to dismiss all aspects of Claim Three except for the right to counsel, right of access to the courts, and equal protection components. The Court **DENIES** the motion to dismiss the right to counsel, right of access to the courts, and equal protection aspects of the claim.

### 3. Claim Four

Plaintiff asserts in Claim Four that the first execution attempt constituted and any subsequent attempt would constitute a Fourteenth Amendment violation. He predicates this contention upon purported liberty and property interests arising from Ohio Revised Code § 2949.22. In its August 12, 2010 Opinion and Order, this Court acknowledged that the Sixth Circuit has rejected such a claim. (Doc. # 801, at 14-16 in 2:04-cv-1156.) Based on the authority discussed in that Opinion and Order, as well as the Sixth Circuit's characterization of

the same core claim targeting Plan B as "foreclosed by our decision in *Biros*," this Court must conclude that Plaintiff has failed to assert a plausible claim. *Cooey (Beuke)*, 604 F.3d at 945-46. The Court therefore **GRANTS** the motion to dismiss Claim Four.

### 4. Claim Five

In Claim Five, Plaintiff alleges that Ohio's protocol and procedures violate his Sixth and Fourteenth Amendment rights to counsel and to access to the courts. Similar to the redundant Claim Three components, the fifth claim survives dismissal based upon the rationale set forth in the Court's August 12, 2010 Opinion and Order. (Doc. # 801, at 16-18 in 2:04-cv-1156.) The Court thus **DENIES** the motion to dismiss Claim Five.

### 5. Claim Six

Plaintiff asserts in Claim Six a purported supplemental state law claim for violation of Article I, Sections 2, 9, and 16 of the Ohio Constitution and Ohio Revised Code § 2949.22. The Sixth Circuit has held, however, that "Section 2949.22 'creates no cause of action to enforce any right to a quick and painless death.' " *Cooey (Beuke)*, 604 F.3d at 945 (quoting *Cooey (Biros)*, 589 F.3d at 234). Moreover, "[t]here is no Ohio statute that is analogous to § 1983 that creates an independent cause of action to remedy violations of the Ohio Constitution." *Harris v. Butler County, Ohio*, No. 1:07CV069, 2008 WL 4186316, at *8 (S.D. Ohio Sept. 3, 2008). Because there is no state statutory claim for relief providing a mechanism for the enforcement of the state constitutional rights involved in this claim, the Court **GRANTS** the motion to dismiss Claim Six.

### III. Conclusion

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss. (Doc. # 42.) The Court dismisses those parts of Claim One

12

attacking the former and current execution protocols but not the attack on a second execution attempt, all of Claim Three except for the right to counsel, access to the courts, and equal protection components, all of Claim Four, and all of Claim Six.  The right to counsel, access to the courts, and equal protection components of Claim Three and all of Claim Five remain pending.  The Court **SEVERS** the no-multiple-attempts aspect of Claim One and all of Claim Two pursuant to Federal Rule of Civil Procedure 21 and **DISMISSES** said claims without prejudice.

      **IT IS SO ORDERED**.

                                                   /s/ Gregory L. Frost
                                     GREGORY L. FROST
                                     UNITED STATES DISTRICT JUDGE