## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **RICHARD COOEY, et al.,** | : | **Case No. 2:04-cv-1156** |
| **Plaintiffs,** | : | **District Judge Gregory L. Frost** |
| | : | **Magistrate Judge Mark R. Abel** |
| **v.** | : | |
| | : | |
| **TED STRICKLAND, et al.,** | : | |
| **Defendants.** | : | |
| | | |
| **BRETT HARTMAN,** | : | **Case No. 2:09-cv-242** |
| **Plaintiff,** | : | **District Judge Gregory L. Frost** |
| | : | **Magistrate Judge E. A. Preston Deavers** |
| **v.** | : | |
| | : | |
| **TED STRICKLAND, et al.,** | : | |
| **Defendants.** | : | |
| | | |
| **LAWRENCE REYNOLDS,** | : | **Case No. 2:10-cv-27** |
| **Plaintiff,** | : | **District Judge Gregory L. Frost** |
| | : | **Magistrate Judge Terence P. Kemp** |
| **v.** | : | |
| | : | |
| **TED STRICKLAND, et al.,** | : | |
| **Defendants.** | : | |
| | | |
| **ROMELL BROOM,** | : | **Case No. 2:09-cv-823** |
| **Plaintiff,** | : | **District Judge Gregory L. Frost** |
| | : | **Magistrate Judge Mark R. Abel** |
| **v.** | : | |
| | : | |
| **TED STRICKLAND, et al.,** | : | |
| **Defendants.** | : | |

---

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT IN DEFENDANTS' FAVOR ON PLAINTIFF ROMELL BROOM'S REMAINING CLAIMS

---

Defendants Ted Strickland, Governor of the State of Ohio; Ernie Moore, Director of the Ohio Department of Rehabilitation and Correction; Donald Morgan, Warden of Southern Ohio Correctional Facility; and un-named "execution team members;" by and through counsel, and, pursuant to the Court's scheduling order of June 25, 2010, move this Court for summary judgment in Defendants' favor on Plaintiff Romell Broom's remaining claims for relief.  The bases for Defendants' motion are fully set forth in the attached memorandum of law.

Respectfully submitted,

RICHARD CORDRAY
Ohio Attorney General


/s/ Thomas Madden
THOMAS MADDEN (0077069)
CHARLES L. WILLE (0056444)
Assistant Attorneys General
Criminal Justice Section, Capital Crimes Unit
150 East Gay Street, 16th Floor
Columbus, Ohio 43215
(614) 728-7055; (614) 728-8600 fax
Email: charles.wille@attorneygeneral.gov
thomas.madden@ohioattorneygeneral.gov

COUNSEL FOR DEFENDANTS

**MEMORANDUM IN SUPPORT**

**I.      Statement of the Case and Facts**

Plaintiff Romell Broom (hereinafter "Broom") is under a sentence of death adjudged by an Ohio court.  In April of 2007, Broom filed a complaint with this Court in which he alleged that the State's "three-drug protocol" for the execution of condemned prisoners was in violation of the Eighth Amendment.   The Court dismissed Broom's complaint as time-barred under the applicable two-year statute of limitations, and that judgment was affirmed by the United States Court of Appeals for the Sixth Circuit.  The Ohio Supreme Court then set Broom's execution for September 15, 2009.  However, the execution was postponed by a reprieve issued by the Governor of Ohio, because defendants' execution team could not obtain access to Broom's veins to administer the lethal chemicals.  Broom then filed a second complaint with this Court in which he again claimed, among other things, that his execution will violate his rights under the Eighth Amendment.

Defendants thereafter changed their execution procedures, discontinuing the use of a "three-drug protocol" and substituting the use of an intravenously administered single drug to cause the prisoner's death.  Defendants also instituted a "back up" alternative, involving the intramuscular injection of other drugs, in the event that access to the prisoner's veins cannot be obtained.  Without objection by the State, this Court stayed Broom's execution pending further review of Broom's complaint.  The Court also permitted Broom and plaintiffs in related cases to file amended complaints.  On January 8, 2010, Broom filed an amended complaint.  Pursuant to the scheduling order issued by the Court, defendants subsequently moved to dismiss Broom's complaint and the complaints of plaintiffs in related cases.

On August 12, 2010, the Court issued an order granting in part defendants' motions to dismiss the complaints of plaintiffs in related cases.  On August 27 2010, the Court issued an order granting in part defendants' motion to dismiss Broom's amended complaint..  Broom presented five claims in his amended complaint.  The Court held as follows with respect to Claims One and Two.  The Court dismissed with prejudice Claim One, to the extent that the claim alleges a violation of the Eighth Amendment predicated on the failed attempt to execute Broom under the previous protocol, and on the allegation that Broom's execution under current procedures would present a substantial risk that Broom would suffer severe pain in violation of the Eighth Amendment.   Claim One also alleges that a second attempt to execute Broom would violate the Eighth Amendment.   Claim Two advances a parallel allegation that a second execution attempt would violate the Double Jeopardy Clause.  Agreeing with defendants, the Court held that the "second execution attempt" allegations necessarily constituted an attack on the validity of Broom's sentence, and hence, must be brought in a habeas corpus proceeding. The Court severed the "second attempt allegations" in Claims One and Two and dismissed such allegations without prejudice.  See Opinion and Order (Document 48), pages 3-8.  Accordingly, Claims One and Two are no longer before the Court.

In his Third Claim, Broom alleges that defendants' current procedures violate his constitutional rights because they do not provide a mechanism for confidential attorney-client communications;  do not allow for counsel's presence unless counsel is designated as one of three statutorily permitted witnesses;  and do not provide counsel with telephone access to the courts and the governor during an execution. The Court noted that these allegations substantially mirrored allegations set forth in Claim Five. The Court denied defendants' motion to dismiss the allegations, for the reasons set forth by the Court in its order denying defendants' motions to

dismiss similar claims by plaintiffs in related cases.  The Third Claim further alleges that defendants' procedures violate the Eighth Amendment and deprive him of substantive and procedural due process guaranteed by the Fourteenth Amendment.  Consistent with its order granting defendants' motions to dismiss similar claims by plaintiffs in related cases, the Court dismissed these allegations with prejudice.  Opinion and Order (Document 48), pages 8-9).

In furtherance of Claim Three, Broom further alleges that defendants' procedures violate his rights under the Equal Protection Clause of the Fourteenth Amendment.  Broom claimed specifically that defendants' procedures "fail to provide for the unique physical characteristics of each condemned prisoner."  The Court expressed concern that Broom's complaint failed  to plead facts sufficient to sustain a finding that Broom actually possessed "unique physical characteristics" that would bring him within the scope of the constitutional violation that he claims.  However, as the Court correctly noted, defendants did not attack the Broom's amended complaint on this basis.  Accordingly, the Court denied defendants' motion to dismiss the allegations, for the reasons set forth by the Court in its order denying defendants' motions to dismiss similar claims by plaintiffs in related cases.   In sum, the Court dismissed all aspects of Claim Three except for the right to counsel, access to the courts and equal protection violations. Opinion and Order (Document 48), pages 9-10).

In his Fourth Claim, Broom alleges that defendants' procedures deprive him of substantive and procedural due process guaranteed by the Fourteenth Amendment.  The Court dismissed the Fourth Claim with prejudice, consistent with its order denying defendants' motions to dismiss similar claims by plaintiffs in related cases.  The Court also relied upon the Sixth Circuit's decision in *Cooey (Beuke) v. Strickland,* 604 F. 3d 939, 945-946 (6th Cir. 2010).  In the Fifth Claim, Broom alleges that defendants' procedures violate his Sixth Amendment right to

counsel and constitutional rights to access to the courts.  The Court denied defendants' motion to dismiss the Fifth Claim, for the reasons set forth by the Court in its order denying defendants' motions to dismiss similar claims by plaintiffs in related cases.  Finally, in Claim Six, Broom alleges a "purported supplemental state law claim" based on Ohio Revised Code Section 2949.22.  The Court dismissed the Sixth Claim with prejudice, consistent with its order denying defendants' motions to dismiss similar claims by plaintiffs in related cases.  The Court also relied on *Cooey (Beuke) v. Strickland,* supra, and *Harris v. Butler County, Ohio,* No. 1:07CV069, 2008 WL 4186316 (S.D. Ohio Sept. 3, 2008).  Opinion and Order (Document 48), pages 11-12).

In the interim, on June 25, 2010, the Court issued an order consolidating the complaints of plaintiffs in related actions and setting forth a schedule in the event that the Court in whole or in part denied defendants' motion to dismiss Plaintiff's complaint or the complaints of plaintiffs in related cases.  The Court's order established a discovery "cut-off" of August 20, 2010, and required the filing of dispositive motions by September 10, 2010.  *See* Order (Document 41) in Case No. 2:09-cv-00242).  On August 30, 2010, the Court issued an order consolidating the instant case with the related cases of other plaintiffs.  *See* Order (Document 49).

## II.     The Court should grant summary judgment on behalf of defendants with respect to Broom's remaining claims.

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, "show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."  *Moses v. Providence Hosp. & Med. Ctrs., Inc.*, 561 F.3d 573, 578 (6th Cir. 2009) (quoting Fed. R. Civ. P. 56(c)).  There can be no genuine issue as to any material fact when the nonmoving party has failed to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  *Barr*

4

*v. Lafon*, 538 F.3d 554, 561-562 (6th Cir. 2008), citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986).

In the instant case, the record as presently constituted demonstrates that Broom cannot make a showing sufficient to establish the existence of elements essential to his remaining claims for relief.  Specifically, with respect to his right to counsel and access to the  courts claims, Broom cannot show that defendants' procedures deny him access to counsel during a critical stage of the criminal process in which he has a right to representation by counsel.  As noted by defendants previously, there is no legal support for the proposition that an execution is a "critical stage" in the adversarial criminal process for the purposes of the Sixth Amendment.  Moreover, there is no evidence that defendants have unreasonably restricted an inmate's access to counsel in anticipation of the execution or unreasonably have restricted counsel from witnessing the inmate's execution.  Counsel is permitted contact with the inmate at the Death House the day before and on the morning of the execution.  It is undisputed that an inmate may designate his counsel as one of three statutorily permitted witnesses on the inmate's behalf.  As for Broom's "access to the courts" argument, Broom cannot show the "actual injury" requisite to establish standing or an otherwise actionable basis for relief.  Broom fails to aver much less show the existence of evidence that defendants' procedures deprive him of access to the courts for the purpose of presenting a non-frivolous allegation of a violation of his constitutional rights.

With respect to Broom's equal protection claim, Broom cannot satisfy the fundamental requirement of an actual injury as a result of defendants' alleged failure to afford him equal protection of the laws.  As the Court pointed out in addressing defendants' previous motion to dismiss, Broom's claim that he has unique physical characteristics that *could* subject him to a substantial risk of severe pain are purely speculative.  Moreover, this Court has already held that

defendants' execution procedures as written and applied as a matter of law do not give rise to a substantial risk that Broom will suffer severe pain.   In any event, Broom cannot otherwise substantiate a violation of equal protection.  Broom is not a member of a suspect class for the purposes of the Equal Protection Clause, nor, in view of the Court's denial of relief under the Eighth Amendment, can Broom show that defendants' alleged deviations from their written procedures deprive him of his fundamental rights.   Therefore, rational basis review applies to Broom's" class of one" claim.  Broom cannot negate every conceivable, rational basis for defendants' discretion to deviate from procedures established by defendants' written execution directive or as a matter of customary practice.

Accordingly, for the reasons more fully explained below, the Court should grant summary judgment on behalf of defendants with respect to Broom's remaining claims.

A.    **The record discloses that Broom cannot establish the essential elements of a violation of the Sixth Amendment right to counsel or a Fourteenth Amendment right to access  to the courts.**

"Under our precedents, once the adversary judicial process has been initiated, the Sixth Amendment guarantees a defendant the right to have counsel present at all "critical" stages of the criminal proceedings." *See Montejo v. Louisiana*, __ U.S. __, 129 S. Ct. 2079, 2085 (2009), and the cases cited therein.  It is well-recognized that an essential element to the right to counsel under the Sixth Amendment is a pending proceeding with respect to which the defendant is entitled under the Sixth Amendment to counsel's assistance.  Accordingly, "[S]ince a defendant has no federal constitutional right to counsel when pursuing a discretionary appeal on direct review of his conviction, *a fortiori,* he has no such right when attacking a conviction that has long since become final upon exhaustion of the appellate process." *Pennsylvania v. Finley,* 481 U.S. 551, 555 (1987).  *See also Murray v. Giarratano*, 492 U.S. 1, 8-9 (1989) (there is no

6

constitutional right to counsel in collateral proceedings for death row inmates). Moreover, the

Sixth Amendment's reach is only to protect the attorney-client relationship from intrusion in the

criminal setting.  *Wolff v. McDonnell*, 418 U.S. 539, 576-77 (1974).

While long recognizing that citizens have a right of access to the courts, the Supreme

Court has grounded the right at various times in different provisions of the Constitution.  *See*

*Broudy v. Mather*, 460 F.3d 106, 117 (D.C. Cir. 2006), and the cases cited therein.  "However

unsettled the basis of the constitutional right of access to courts, our cases rest on the recognition

that the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered

injury by being shut out of court."  *Christopher v. Harbury*, 536 U.S. 403, 415 (2002).

Accordingly, to establish a violation of the right to access to the courts, a prisoner must show an

"actual injury," i.e., that the conduct hindered his efforts to pursue a non-frivolous legal claim.

*Lewis v. Casey*, 518 U.S. 343, 349-353 (1996).

In *Lewis v. Casey*, the Supreme Court emphasized that the required showing of actual

injury "derives ultimately from the doctrine of standing, a constitutional principle that prevents

courts of law from undertaking tasks assigned to the political branches."  Hence:

> It is the role of courts to provide relief to claimants, in individual or class
> actions, who have suffered, or will imminently suffer, actual harm; it is not the
> role of courts, but that of the political branches, to shape the institutions of
> government in such fashion as to comply with the laws and the Constitution. In
> the context of the present case: It is for the courts to remedy past or imminent
> official interference with individual inmates' presentation of claims to the courts;
> it is for the political branches of the State and Federal Governments to manage
> prisons in such fashion that official interference with the presentation of claims
> will not occur.  Of course, the two roles briefly and partially coincide when a
> court, in granting relief against actual harm that has been suffered, or that will
> imminently be suffered, by a particular individual or class of individuals, orders
> the alteration of an institutional organization or procedure that causes the harm.
> But the distinction between the two roles would be obliterated if, to invoke
> intervention of the courts, no actual or imminent harm were needed, but merely
> the status of being subject to a governmental institution that was not organized or
> managed properly. If -- to take another example from prison life -- a healthy

inmate who had suffered no deprivation of needed medical treatment were able to claim violation of his constitutional right to medical care, *see Estelle v. Gamble,* 429 U.S. 97, 103, 50 L. Ed. 2d 251, 97 S. Ct. 285 (1976), simply on the ground that the prison medical facilities were inadequate, the essential distinction between judge and executive would have disappeared: it would have become the function of the courts to assure adequate medical care in prisons.

*Id.*

In the Third and Fifth Claims of his amended complaint, Broom alleges that defendants' execution policy denies his right to counsel under the Sixth Amendment and constitutional rights to access to the courts.  He avers specifically that defendants' execution "protocol" is constitutionally deficient because "it does not allow for confidential attorney-client consultation; it makes no provision for counsel to be present to witness the execution; nor does it allow for the client to communicate with his counsel in the event problems develop during the  execution." Broom further avers that defendants' procedures are deficient because Broom can only obtain counsel's presence by designating counsel as one of three statutorily authorized witnesses on his behalf;  and because there are allegedly no procedures to allow for access to the courts and the governor in the event of problems during the execution.  In furtherance of his Fifth Claim, Broom avers that defendants' procedures fail to allow  for confidential attorney-client communications on the day of the execution, fail to allow counsel to bring a cell phone into the death house or to provide a phone in the death house for counsel's use. *See* Amended Complaint, pages 38-39 42.

Review of Broom's specific allegations in light of the applicable law and the indisputable facts requires a conclusion that defendants are entitled as a matter of law to judgment in their favor on Broom's right to counsel and access to the courts claims.   First, there is no legal basis for Broom's contention that an execution is a "critical stage" of a criminal proceeding for the purposes of the Sixth Amendment right to counsel.  *Pennsylvania v. Finley,* supra, 481 U.S. at

8

555 (no Sixth Amendment right to counsel after conviction and sentence have been affirmed on appeal).  Nor can such a right be reasonably extrapolated from existing precedent.  An execution obviously is not an adversarial proceeding in which counsel for the inmate is required to present evidence and argument on the inmate's behalf.  Nor is it reasonable to conclude that a condemned inmate has a right to counsel's presence to ensure that the inmate's rights under the Eighth Amendment are not violated.  The impracticality of such a rule is self-evident.  Would the persons conducting the execution be required to stop the execution in the event that counsel believed that the inmate was being subjected to constitutionally prohibited pain or suffering?  Would an advance warning to the inmate be required, to the effect that the inmate could request to speak with counsel in the event that the inmate believed his rights were or are about to be violated?  Would it be necessary to transport the inmate to another location to ensure that the inmate and counsel can carry on confidential communications?  In short, there is no legal ground for extending the reach of the Sixth Amendment to executions, and considerable practical reasons for not doing so.

Second, even if a limited right to counsel's presence as a witness could be derived from existing law, there is no evidence that this putative right is being violated by defendants.  Broom tacitly concedes that he may designate counsel as one of his three statutorily authorized witnesses.  In other words, Broom does not allege must less offer evidence to show that his counsel is prevented from witnessing his execution.  Rather, Broom claims the right to counsel's presence in addition to the statutorily designated witnesses.  Broom's claim in the latter regard is an invitation to the Court to assume an organizational or management function over defendants' execution procedures that obliterates the distinction between the Court's proper role "to provide relief to claimants ... who have suffered, or will imminently suffer, actual harm," and defendants'

role " to shape the institutions of government in such fashion as to comply with the laws and the Constitution." *Lewis v. Casey*, *supra*.

Broom's "access to the courts" claim is similarly unsustainable as a matter of law and fact.   Broom does not aver much less posit evidence of actions by defendants which have prevented him from presenting to the courts a non-frivolous claimed violation of his constitutional rights.   Indeed, Broom was not precluded from presenting such claims to this Court.  Moreover, it seems doubtful that immediate access to the courts could ever be obtained as a practical matter in the event that "something goes awry" during an execution.  Current law provides a reasonable solution.  The Supreme Court has recognized that "subjecting individuals to a risk of future harm--not simply actually inflicting pain--can qualify as cruel and unusual punishment" in violation of the Eighth Amendment.  *Baze v. Rees,* 553 U.S. 35, 49 (2008). Broom certainly has been provided access to the courts to claim that defendants' procedures subject him to the risk of future harm -- a claim that has been rejected.

Fourth, the record warrants a conclusion that defendants are entitled to judgment in their favor as a matter of law based on the undisputed facts.  It is undisputed that counsel is not precluded from witnessing the execution of the inmate.   Moreover, as defendants' written directive and the affidavit of Director Moore plainly demonstrate, the condemned inmate is afforded reasonable opportunities to consult with counsel in anticipation of the inmate's scheduled execution.  Until the day before the inmate's scheduled execution, while incarcerated at either the Ohio State Penitentiary or the Mansfield Correctional Institution, the inmate may visit with or make non-monitored telephone calls to his attorney.  On the day before the day scheduled for execution, the inmate is transferred to the Death House at the Southern Ohio Correctional Facility in Lucasville, Ohio.  Upon the day of the inmate's arrival, between 4:30

p.m. and 7:30 p.m., the inmate is allowed "contact visits" with whomever the inmate chooses, including the inmate's counsel if the inmate so desires.  The Warden also has the discretion to permit visits before 4:30 p.m.  Executions normally commence at 10:00 a.m. on the day of execution.  From 6:30 a.m. until 8:00 a.m., the inmate is permitted "non-contact" cell-front visits by whomever the inmate chooses, including the inmate's counsel.  The inmate's counsel is permitted a cell-front visit until 8:45 a.m.

The undisputed evidence also discloses that defendants' procedures provide the inmate's counsel on the morning of the execution with means to contact prison officials and persons outside the Death House, including court officials.  Due to security concerns, no visitors to the Death House are permitted to bring cell phones or personal computers.  However, as a customary practice, the Warden of S.O.C.F. has provided an office for the inmate's attorneys, located in a building adjacent to the Death House.  The office provides access to telephones and a computer. The restrictions placed on communications equipment that counsel may bring in the Death House are reasonably related to the legitimate needs of the institution to safeguard the safety and security of institutional personnel and the inmate.  Moreover, although the execution generally commences at 10:00 a.m., it is the practice of responsible officials to delay commencement of the execution until it has been determined that no requests for stays of execution, or other legal or executive actions that could require that the execution not take place, remain pending.  This is a reasonable means of ensuring that the prisoner's access to the courts is not impeded.

In sum, for all the foregoing reasons, the record discloses that Broom cannot establish the essential elements of a violation of the Sixth Amendment right to counsel or a constitutional right to access to the courts.  Accordingly, defendants are entitled to judgment in their favor as a matter of law.

11

**B.**     **The record discloses that Broom cannot establish the essential elements of a violation of the Fourteenth Amendment's Equal Protection Clause.**

Plaintiffs in the federal courts "must allege some threatened or actual injury resulting from the putatively illegal action before a federal court may assume jurisdiction."  *Linda R. S. v. Richard D.*, 410 U.S. 614, 617 (1973).  There must be a "personal stake in the outcome" such as to "assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." *Baker v. Carr,* 369 U.S. 186, 204 (1962). Abstract injury is not enough. It must be alleged that the plaintiff "has sustained or is immediately in danger of sustaining some direct injury" as the result of the challenged statute or official conduct. *Massachusetts v. Mellon,* 262 U.S. 447, 488 (1923). The injury or threat of injury must be both "real and immediate," not "conjectural" or "hypothetical." *Golden v. Zwickler*, 394 U.S. 103, 109-110 (1969); *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941); *United Public Workers v. Mitchell*, 330 U.S. 75, 89-91 (1947).

The party invoking federal jurisdiction bears the burden of establishing these elements. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992), citing *FW/PBS, Inc. v. Dallas,* 493 U.S. 215, 231 (1990) and *Warth v. Seldin*, 422 U.S. 490, 508 (1975).  Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i. e., with the manner and degree of evidence required at the successive stages of the litigation. *Id*, citing *Lujan v. National Wildlife Federation*, 497 U.S. 871, 883-889 (1990); *Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 114-115, and n. 31 (1979); *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 45, n. 25 (1976);  and .*Warth*, *supra*, at 527, and n. 6 (Brennan, J., dissenting).  In response to a summary judgment motion, the plaintiff

12

must set forth by affidavit or other evidence specific facts which for purposes of the summary judgment motion will be taken to be true.  *Id.*

The Equal Protection Clause prohibits discrimination by government which targets a suspect class, burdens a fundamental right, or intentionally treats one differently than others similarly situated without any rational basis for the difference. *Trihealth Inc. v. Board of Commissioners*, 430 F.3d 783, 788 (6th Cir. 2005).  Where a plaintiff cannot show that he is a member of a suspect class or that he has been subjected to a violation of a fundamental right, he can obtain relief under the Clause only by showing that there is no rational basis for the challenged government action.  To make such a showing, the plaintiff must negate every conceivable basis which might support the government action, or prove that the challenged action was motivated by animus or ill-will.  *Id.*, citing *Warren v. City of Athens*, *Ohio*, 411 F.3d 697, 710-11 (6th Cir. 2005)..  The rational basis standard of review "is a paradigm of judicial restraint."  *F.C.C. v. Beach Communications, Inc*., 508 U.S.  307, 314 (1993). "The Constitution presumes that, absent some reason to infer antipathy, even improvident decisions will eventually be rectified by the democratic process and that judicial intervention is generally unwarranted no matter how unwisely we may think a political branch has acted."  *Id.*, quoting *Vance v. Bradley*, 440 U.S. 93, 97 (1979) (footnote omitted).

In furtherance of Claim Three, Broom alleges that "[a]llowing Broom to be subjected to a wantonly painful execution process by failing to take into account his unique physical circumstances would and has denied him Equal Protection as well as Due Process of Law."  As this Court has already found, however, Broom does not aver that as a matter of fact he possess such "unique physical characteristics," but rather that "there may also exist risks and issues unique to Broom and his veins," and that "these issues, to the extent they exist, would continue to

13

prevail on any future execution date." *See* Amended Complaint (document 40), page 37.  The

Court correctly observed that "s]uch speculative pleading arguably falls short of meeting the

mandated standard of pleading factual content that allows the court to draw the reasonable

inference that Defendants have violated or will violate the Constitution as alleged."  Opinion and

Order (Document 48), page 9.

Review of Broom's allegations in light of the applicable law and the indisputable facts

requires a conclusion that defendants are entitled as a matter of law to judgment in their favor on

Broom's equal protection claim. Broom cannot show the "actual injury" necessary for standing to

raise his claim.  For the reasons noted by the Court, Broom's speculative averments arguably fall

short of pleading the requisite elements of an actionable equal protection violation.  It is readily

apparent that no evidence exists that Broom has unique physical characteristics which defendants

could and should have anticipated before attempting to execute him, and which could prove

problematic in a second attempt. The Court's rejection of Broom's Eighth Amendment claim

further requires a conclusion that Broom cannot prove the actual injury necessary for an

actionable claim.  A substantial risk of severe pain necessarily is the only conceivable

"threatened or actual injury" resulting from defendants' alleged failure to conform to its written

execution directive.  *See Cooey (Beuke) v. Strickland,* 604 F. 3d 939, 945 (6th Cir,. 2010) ("A

threshold question, then, is what is the "harm" that is being referenced? It surely cannot be an

inmate's ultimate death, as that is the intended consequence of any execution protocol.")  This

Court has held that defendants' procedures pose no such risk to Broom.

Aside from Plaintiff's patent lack of standing, Broom cannot otherwise satisfy the

elements of an actionable equal protection claim.  Broom is not a member of a suspect class for

the purposes of the Equal Protection Clause.  *Michael v. Gee*, 498 F.3d 372, 379 (6th Cir. 2007)

14

(Prisoners are not considered a suspect class for purposes of equal protection litigation).  For the reasons stated previously, Broom cannot show that defendants' alleged failure to account for his supposed "unique physical characteristics" will violate his rights under the Eighth Amendment. Accordingly, rational basis review applies to Broom's "class of one" claim.   Broom must therefore negate every conceivable, rational basis for defendants' allegedly wrongful actions. *Trihealth Inc. v. Board of Commissioners*, *supra*, 430 F.3d at 788.

In Broom's case, defendants' difficulty in obtaining access to Broom's veins -- which he speculates may have been caused by "unique physical characteristics" -- prompted defendants to alter their execution procedures.  By adopting a one-drug injection, defendants purposely ceased using the pancuronium bromide and potassium chloride that had been the focus of previous Eighth Amendment challenges to lethal injection protocols.  And, the intramuscular injection seeks to avoid an unduly prolonged search for difficult-to-access veins and to provide a safe, non-IV lethal injection method.  *See Cooey (Biros) v. Strickland,* 589 F. 3d 210, 222 (6th Cir. 2009T).   The Court has found that defendants' "back up" comports with the specific constitutional standard set forth by the Eighth Amendment.  All of defendants' modifications were motivated by "an earnest desire to provide for a progressively more humane manner of death."  *Baze v. Rees*, 553 U.S. 35, 51 (2008).   Moreover, Defendants' paramount interest in formulating their policies is "to ensure that the completion of the execution is carried out in a humane, dignified and professional manner."  *See* O.D.R.C. Written Directive Number 01-COM-11 (Effective November 30, 2009), page 6.  Accordingly, Broom cannot show that defendants have acted arbitrarily and irrationally.

Ironically, there is an inherent contradiction in Broom's equal protection argument. Broom essentially claims that defendants are constitutionally *required* to adjust their execution

15

procedures to adjust to a condemned inmate's unique physical characteristics.  Yet he advances this claim within a legal basis for relief -- the Equal Protection Clause -- that presupposes defendants will apply their procedures uniformly to all condemned inmates.

## IV.    Conclusion

For all the foregoing reasons, the defendants' motion for summary judgment should be granted.

Respectfully submitted,

RICHARD CORDRAY
Ohio Attorney General


/s/ Thomas Madden
THOMAS MADDEN (0077069)
CHARLES L. WILLE (0056444)
Assistant Attorneys General
Criminal Justice Section, Capital Crimes Unit
150 East Gay Street, 16th Floor
Columbus, Ohio 43215
(614) 728-7055; (614) 728-8600 fax
Email: charles.wille@attorneygeneral.gov
thomas.madden@ohioattorneygeneral.gov

COUNSEL FOR DEFENDANTS

CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of DEFENDANTS'

MOTION FOR SUMMARY JUDGMENT was filed electronically this 10th day of September,

2010.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing

system.  Parties may access this filing through the Court's system.


/s/ Thomas Madden
THOMAS MADDEN (0077069)