# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

RICHARD COOEY, et al.,

        Plaintiffs,

                                      Case No. 2:04-cv-1156
      v.                              JUDGE GREGORY L. FROST
                                        Magistrate Judge Mark R. Abel

TED STRICKLAND, et al.,

        Defendants.

BRETT HARTMAN,

        Plaintiff,

                                        Case No. 2:09-cv-242
      v.                              JUDGE GREGORY L. FROST
                                        Magistrate Judge E.A. Preston Deavers

TED STRICKLAND, et al.,

        Defendants.

ROMELL BROOM,

        Plaintiff,

                                        Case No. 2:09-cv-823
      v.                              JUDGE GREGORY L. FROST
                                        Magistrate Judge Mark R. Abel

TED STRICKLAND, et al.,

        Defendants.

LAWRENCE REYNOLDS,

        Plaintiff,

                                        Case No. 2:10-cv-27
      v.                              JUDGE GREGORY L. FROST
                                        Magistrate Judge Mark R. Abel

TED STRICKLAND, et al.,

        Defendants.

## OPINION AND ORDER

1

The consolidated cases are before the Court for consideration of the following filings:[1]

(1) Plaintiffs' motion for an extension of time or a stay of the motions *in limine* filing deadline (ECF No. 866);

(2) Plaintiffs' motion *in limine* (ECF No. 867);

(3) Defendants' motion for leave to file answers *instanter* (ECF No. 868), Plaintiffs' memorandum in opposition (ECF No. 871), and Defendants' reply memorandum (ECF No. 872); and

(4) Defendants' motions for summary judgment (ECF Nos. 820, 821, 823, 824, 825, 826, 827, 828, 829, 830, 831, 832, 833, 834, 835, 836, 842), Plaintiffs' memorandum in opposition (ECF No. 849), Defendants' reply memorandum (ECF No. 861), and Plaintiffs' sur-reply memorandum (ECF No. 864).[2]

For the reasons that follow, this Court **GRANTS** Plaintiffs' motion for an extension of time or a stay of the motions *in limine* filing deadline (ECF No. 866), **DENIES** Plaintiffs' motion *in limine* (ECF No. 867), **GRANTS** Defendants' motion for leave to file answers *instanter* (ECF No. 868), and **GRANTS IN PART and DENIES IN PART** Defendants' motions for summary judgment (ECF Nos. 820, 821, 823, 824, 825, 826, 827, 828, 829, 830, 831, 832, 833, 834, 835, 836, 842) on Plaintiffs' right to counsel and access to the courts claims

---

[1] For ease of reference, the Court shall refer to filings by their docket numbers in Case No. 2:04-cv-1156. The Opinion and Order applies, however, to all corresponding filings in each consolidated case.

[2] Most of the summary judgment briefing is identical with the exception of essentially non-substantive briefing recognizing the individualized circumstances leading to each plaintiff's case. For ease of reference, this Court shall refer to only one specific motion or brief herein, with the understanding that any such reference applies to each corresponding filing.

while holding that part of the motions targeting Plaintiffs' Equal Protection claims in abeyance.

## I. Background

This Court has at various stages throughout this litigation set forth, at times in near exhaustive if not exhausting detail, the background of the lethal injection protocol challenges constituting this consolidated litigation.  Because the parties agree on nearly all of the factual contentions relevant to the limited issues addressed in this Opinion and Order, the Court shall not repeat its summary here but incorporates by reference its prior recitations of the relevant facts.

Of import here is that following over a half-decade of litigation variously conducted before this Court and the Sixth Circuit Court of Appeals, in addition to the parties' attempts to invoke involvement by the United States Supreme Court, two basic claims comprise the last components of the lethal injection protocol challenges constituting this consolidated litigation: Plaintiffs assert a denial of the right to counsel and access to the courts claim and a Fourteenth Amendment equal protection claim targeting deviations from Ohio's execution protocol that Plaintiffs claim undercut treating similarly situated inmates similarly during the execution process.  Defendants have filed motions for summary judgment on each of these claims, and the parties have completed briefing.  The motions are now ripe for disposition.

Following summary judgment briefing, several issues arose that produced additional motions.  After a January 20, 2011 telephone status conference that involved discussion of the state of the pleadings, the docket, discovery, the motions in limine deadline, and the probability of Ohio adopting a new execution protocol, Plaintiffs filed a motion for an extension of time or a stay of the motions *in limine* filing deadline.  (ECF No. 866.)  Plaintiffs also filed a motion in

limine related to Defendants' failure to have filed answers to the most recent complaints. (ECF No. 867.) Defendants filed a motion for leave to file *instanter* answers to the amended complaints (ECF No. 868), and in light of the impending trial date and the various pending motions, this Court ordered expedited briefing on the latter motion (ECF No. 869).

## II. Miscellaneous Motions

Following disposition of the latest motions to dismiss, Defendants failed to file answers to the amended complaints within the deadlines arising from Federal Rule of Civil Procedure 12(a)(4)(A). Defendants offer as explanation for their lapses that they thought that no new answers were necessary, stating that "counsel were under the mistaken belief that this Court's scheduling Order was controlling authority." (ECF No. 868, at 4.) Because that Order did not set a deadline for the filing of answers, Defendants' counsel assumed that "this Court felt answers were unnecessary." (*Id.*) This understanding of civil litigation ignores Rule 12(a)(4)(A), which sets a specific answer deadline "[u]nless the court sets a different time." This Court's silence meant that the default deadline controlled.

As revealed in the January 20, 20011 telephone status conference, both this Court and Plaintiffs had incorrectly assumed that Defendants had answered the amended complaints until recently. The fact that the pleading deficiency went unaddressed until now is embarrassing for this Court and all counsel involved on both sides of this litigation.

Regardless of the fact that the lack of new answers had so little effect on Plaintiffs that they did not even notice the deficiency until recently, Plaintiffs have not hesitated to attempt to capitalize on the issue. Although conceding that "[t]his Court has substantial discretion to allow Defendants' untimely responsive pleadings under Rule 6(b)," Plaintiffs argue that the Court

4

should deny the filing of belated answers. (ECF No. 871, at 3.) Plaintiffs also seek deemed admissions that would amount to a de facto default judgment via a motion *in limine*. (ECF No. 867.)

In opposing the filing of answers, Plaintiffs assert prejudice. They contend that because Defendants are denying factual allegations as opposed to only the legal significance of those asserted events, Plaintiffs incur harm because they cannot conduct "targeted discovery that may be necessary." (ECF No. 871, at 4.) Plaintiffs have not identified any specific allegations warranting any necessary discovery that has not already been conducted in the over six years of this litigation.

Plaintiffs also posit that because the motions *in limine* deadline passed prior to the filing of the proffered answers, they were faced with the choice of forfeiting their right to file motions *in limine* or filing expansive motions based on what they guessed Defendants would dispute. This asserted prejudice ignores that motions *in limine* yield only interlocutory decisions, which are not binding on the Court at the bench trial where any and all issues that were raised or could have been raised in a motion *in limine* are subject to renewed consideration. Also informing this asserted prejudice is the fact that Plaintiffs have filed an unopposed motion to extend the motions *in limine* filing deadline. (ECF No. 866.) The Court **GRANTS** that motion and will set a new motions *in limine* deadline in consultation with the parties.

In addition, Plaintiffs assert that prejudice exists because the purported new denials of facts by Defendants substantially affects Plaintiffs' trial strategy, which they note includes which witnesses to call at trial. Plaintiffs do not provide specific details of how the answers substantially alter their preparations for the February 28, 2011 trial. Despite their conclusory

contention, this Court recognizes the theoretical possibility that Plaintiffs could be affected in some way. The Court is also acutely aware of obvious ramifications of the newest protocol revisions and the possible discovery issues. Consequently, the Court will discuss with the parties at the scheduled February 1, 2011 status conference any need for a new trial date. Such a delay is unfortunate given the troubled history of this lengthy litigation, but it is far preferable to delay a trial and address the issues fully and on the merits than to risk injustice. A new trial date would mitigate the unspecific prejudice Plaintiffs seek to invoke.

Defendants have presented sufficient cause that should permit the filing of their proffered answers *instanter*. *See Morgan v. Gandalf, Ltd.*, 165 F. App'x 425 (6th Cir. 2006) (affirming order permitting the post-summary judgment briefing filing of an almost eight-months late answer); *Britord v. Collins*, No. 2:07-cv-0306, 2007 WL 4371670 (S.D. Ohio Dec. 4, 2007) (granting leave to file an untimely answer). *See also United States v. Munoz*, 605 F.3d 359, 368 (6th Cir. 2010) (discussing the concept of excusable neglect). Their conduct evinces neglect, and as in *Morgan*, equitable consideration of all of the relevant circumstances renders the neglect excusable. 165 F. App'x at 428–30. Justice requires that this case proceed on the merits and not achieve disposition even in part based on what amounts to a technicality that carries with it no harm. There is no prejudice to Plaintiffs, the reasons for the delayed filing are sufficient, the notable delay is of no consequence to the merits of this litigation, and Defendants are acting in good faith. Moreover, both sides have dropped the ball at various times during the course of this litigation, and it has been the practice of this Court to exercise often generous leniency so that the important issues involved in this litigation are not lost amid the carelessness or inexperience with civil litigation of select counsel.

6

Denying the filing of answers would mean that this Court endorses Plaintiffs' attempt to prevail in this litigation in part or in the entirety regardless of the merits or lack thereof of any of their claims. Plaintiffs' motion *in limine* seeks to capitalize on Defendants' failing to file answers to the amended complaints by having critical issues turn on deemed admissions, regardless of the fact that Defendants have been litigating nearly every aspect of every issue in this litigation no matter how unimportant a point may be for years. Plaintiffs' recent approach is ironic because Plaintiffs' mantra throughout the over six years of this litigation has routinely been *let us reach the merits at a trial*, and Plaintiffs now attempt to circumvent the merits by technicality. But Defendants' pleading error was a good faith mistake apparently created by the convoluted filings in this litigation and an inexplicable if not inexperienced interpretation of the Federal Rules of Civil Procedure and this Court's Orders. No harm resulted to Plaintiffs. Deemed admissions and a denial of the belated filing of new answers are not warranted and would not further the cause of justice.

The Court **DENIES** Plaintiffs' motion in limine (ECF No. 867) and **GRANTS** Defendants' motion for leave to file answers *instanter* (ECF No. 868).[3]

### III.  Summary Judgment

**A.  Standard Involved**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute

---

[3]  Because the parties have completed briefing on the motion for leave to file *instanter*, the Court has proceeded to reviewing the filings and dispenses with waiting until the scheduled non-oral hearing date to issue its decision. Additionally, the Court notes that in light of the fact that it will accept additional motions *in limine*, Plaintiffs' request for leave to amend its motion *in limine* is not well taken.

as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *See Muncie Power Prods., Inc. v. United Tech. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In viewing the evidence, the Court must draw all reasonable inferences in favor of the nonmoving party, which must set forth specific facts showing that there is a genuine issue of material fact for trial. *Id*. (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)). Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-52).

**B. Analysis**

As noted, Plaintiffs assert 42 U.S.C. § 1983 claims against Defendants predicated upon purported violations of the right to counsel and the right of access to the courts. Defendants move for summary judgment on each component of these claims on multiple grounds. First, Defendants argue that because an execution is not a critical stage in the criminal process for Sixth Amendment purposes, there is no right to counsel here. Second, Defendants contend that

8

they are entitled to judgment as a matter of law because there is no evidence that they have
unreasonably restricted access to counsel, they in fact provide accommodations enabling limited
access to counsel and access to the courts, and they honor an inmate's statutory right to designate
counsel as a witness. Third, Defendants assert that Plaintiffs cannot prevail on their access to the
courts claims because Plaintiffs cannot show the requisite actual injury of demonstrating that the
protocol deprives Plaintiffs of the ability to present to a court non-frivolous allegations of
violations of a constitutional right.

Before this Court addresses the substance of these arguments, it is prudent if not
necessary to define the contours of the issues presented. While opposing summary judgment in
its entirety, Plaintiffs argue in the alternative that, at best, Defendants could obtain only partial
summary judgment because Defendants have failed to target more than the Sixth Amendment
component of Plaintiffs' right to counsel and access to the court claims. Given the purported
selective and narrow scope of Defendants' summary judgment motions, Plaintiffs argue, this
Court cannot grant summary judgment on Plaintiffs' First, Eighth, and Fourteenth Amendment
rights that stand apart from the Sixth Amendment rights asserted.

Plaintiffs' argument mistakes perceived nuance for salvaging technicality. As
Defendants correctly contend in response to Plaintiffs' argument that Defendants cannot prevail
by undue simplification or the unbundling of often overlapping rights, the core issues involved in
the right to counsel and access to the courts claims extend beyond bright-line distinctions that
would compartmentalize these constitutional rights. Defendants' arguments target whether there
is infringement of the right of access to the courts, for example, regardless of the constitutional
provision from which that right emanates. Moreover, Defendants' arguments are sufficiently

9

broad to encompass each component of Plaintiffs' claims, assuming for the sake of argument that Plaintiffs even sufficiently identified in their pleading all of the asserted sources of their rights. The consequent result is that Plaintiffs are unable to weave their hair-splitting argument into the Gordian Knot they seek to create to evade dispositive summary judgment.  For present purposes then, the question is more whether the extant rights are infringed, not the specific provisions underlying those rights.  Once a right exists, the inquiry turns to the viable exercise of that right.

Turning to the first of the three basic components of Plaintiffs' counsel and access claims, the Court recognizes that Defendants' threshold argument that the Sixth Amendment does not apply because an execution is not a critical stage in the criminal process largely misses the point.[4]  It is well settled that " 'the Sixth Amendment guarantees a defendant the right to have counsel present at all "critical" stages of the criminal proceedings.' " *Ayers v. Hudson*, 623 F.3d 301, 309 (6th Cir. 2010) (quoting *Montejo v. Louisiana*, 129 S. Ct. 2079, 2085 (2009)).  But in debating any applicability of that right here, the parties are arguing over irrelevant issues. Plaintiffs' inherent premise–that Defendants are not affording Plaintiffs an unhindered right to have counsel present during the execution process, thereby violating the right to counsel–is itself a flawed proposition, regardless of whether Plaintiffs have a constitutional right (from *any* source) to have counsel witness an execution.

The protocol effective as of November 15, 2010, essentially tracks Ohio Revised Code §

---

[4]  Defendants argue again and again in their briefing that there is no right to counsel for inmates who seek to attack collaterally their convictions and sentence.  It is well settled that this § 1983 litigation, which has been ongoing for nearly seven years, is not an attack on any inmate's conviction or sentence, but is instead an attack on the execution protocol, which falls under the category of a condition of confinement.

2949.25 in identifying who may attend an execution.  In addition to permitting the attendance of a clergyperson for an inmate, the statute permits an inmate to designate also "not more than three . . . persons . . . who are not confined in any state institution" to serve as witnesses.  Ohio Rev. Code § 2949.25(A)(5).  Section VI(A)(5)(f) of the protocol recognizes this statutory right of tripartite designation but qualifies the specific designations as "subject to the approval of the Warden or Acting Warden based on security considerations."  (ECF No. 865-1, at 3, Nov. 15, 2010 Protocol.)  There is no evidence that any warden, acting warden, or anyone associated in any way with the execution process has exercised, has attempted to exercise, or has contemplated exercising in the future this discretion to refuse a designation based on security concerns to preclude any counsel serving as a witness.  Rather, the issue at the core of the parties' debate is whether the fact that an inmate can have counsel present to witness an execution only if the inmate designates counsel as one of the three permissible witnesses runs afoul of the Constitution.

The answer is no.  A system that requires an inmate to forego one layperson witness in order to have counsel present in no way functions as an infringement on any right to counsel or effectuates any preclusive effect of constitutional import.  Whether grounded in the Sixth Amendment or elsewhere in another amendment to the Constitution, any possible right to counsel trumpeted by Plaintiffs in this litigation thus remains untouched by Ohio Revised Code § 2949.25 and the protocol.  Both the statute and the protocol permit the presence of counsel regardless of whether there is any right to counsel in this context.  If there is no right to counsel that applies to an execution, then a scheme that enables at an inmate's discretion the presence of counsel of course cannot offend the Constitution.  And if there is a right to such counsel, then a

scheme that enables at an inmate's discretion the presence of such counsel does not as a matter of law infringe on that right.  This Court therefore need not and does not decide the precise source of the right or whether the right even applies here because the statutory and protocol rules requiring that any attendant counsel for an inmate be a designated witness do not present any issue of actual constitutional dimension.  In other words, because Ohio allows counsel to witness executions regardless of whether the Constitution mandates that the state do so, the existence of any such mandate is moot.

    If an inmate designates counsel as a witness, then only the ability for that inmate to have three (instead of two) non-counsel designated witnesses is lost.  This does not infringe on a constitutional right, but only restricts the exercise of a state grant as to how many layperson witnesses that inmate may have.  The witness scheme presented by the statute and the protocol always affords the option of the presence of counsel, and if the inmate seeks to have that to which he or she has no constitutional right–i.e., *three* non-counsel witnesses–then the inmate in making that choice voluntarily elects to forego the presence of counsel.  The conditional exercise of the presence of counsel simply leads to the statutorily and protocol-created result of dropping a layperson witness, leaving any right to counsel untouched.

    Not every exercise of a constitutional right must be free of consequences.  A criminal defendant exercising the right to proceed *pro se* forfeits any possible applicable right to appointed counsel.  A defendant waiving the right to remain silent elects to forego a constitutional protection in order to exercise a right to speak.  A defendant who seeks to plead guilty gives up the right to hold the prosecution to its burden of proof and the right to a trial.  Similarly, if an inmate wants three layperson witnesses, he or she can elect to forfeit any possible

12

right to counsel serving as a witness without the rules enabling the inmate to do so running afoul of the Constitution. The exercise or forfeiture of any right to counsel at an execution are choices that are within the sole discretion on the inmate. As a matter of logic, the rules that present such a choice here cannot violate the Constitution.

It is reasonable and no doubt in fact a matter of pragmatic necessity for a state to place limitations on the number of individuals who can witness an execution on an inmate's behalf. Foregoing one layperson witness in favor of exercising any right to counsel is not a toll for the use of a constitutional right but an incidental result of no constitutional concern. The right to counsel, assuming there is one in this context, remains untouched; only the presence of layperson individuals who can serve as witnesses by the state's good graces is consequently limited. Although Plaintiffs argue that there is no such analogous restriction on the presence of counsel for the state, Plaintiffs have failed to present any persuasive argument that any component of any right to counsel requires such a tit-for-tat approach. The Constitution does not compel this Court to function as a micro-manager assuming oversight responsibility over such discretionary governmental decisions; what the Constitution does in this case is simply compel this Court to decide whether the protocol and relevant state practices honor those rights set forth in the Constitution. Thus, because the witness rules applicable to Ohio executions do not on their face preclude or limit the exercise of any possible constitutional right to counsel to serve as a witness, but instead only eliminate a conditional layperson witness at an inmate's election, the Court **GRANTS** summary judgment in favor of Defendants on this component of Plaintiffs' claims.

This leads to the next chronological component of Plaintiffs' counsel/access argument: the assertion that Defendants are infringing on constitutional rights by failing to provide inmates

with the means of communicating with counsel during the actual execution process.  It does not

matter for this specific analysis whether there is the overarching right to counsel left undecided

above because there is unquestionably a right to access the courts involved in the context of

executions that inherently injects the issue of access to counsel into this discussion.[5]

In supporting their motions for summary judgment, Defendants state in their briefing that

they

> rely not only on plaintiffs' lack of a right to counsel's presence under the Sixth and
> Fourteenth Amendments, but also on undisputed facts that defendants have not
> prevented counsel from witnessing executions and have not denied counsel the
> ability to contact the courts and persons outside the institution after the execution
> commences.

(ECF No. 861, at 6.)    As already discussed, the Court disagrees with a portion of Defendants'

rationale but not with the dispositive outcome of the witness argument, and as set forth below,

the Court concludes that Defendants are correct in regard to the contacting the courts argument.

What proves problematic for Defendants is that portion of Plaintiffs' claims that Defendants'

quoted summary omits, the ability of an inmate to confer with his or her counsel.  It is this

essential linking component that makes the presence of counsel of any potential value to an

inmate and that renders meaningful the ability of counsel to access a court on an inmate's behalf.

The problem is that the circumstances created by the protocol and the custom and practices

create an environment that can likely suppress the timely assertion of non-frivolous

constitutional claims.

---

[5] For purposes of the instant discussion, this Court shall follow the parties' lead and
generally include access to the state governor as part of what access to the courts means.

Higher courts have made clear that challenges to execution protocols such as those involved in these consolidated cases constitute not attacks on the validity of confinement or its duration, but rather attacks on the circumstances of confinement. *See Hill v. McDonough*, 547 U.S. 573, 579 (2006) (recognizing in the context of a lethal injection case that "[a]n inmate's challenge to the circumstances of his confinement . . . may be brought under § 1983."). The distinction is both relevant and ultimately dispositive of Defendants' red herring rationale that there is no right to counsel because those same courts have also recognized the requirement that prisoners be provided with the tools they need "to attack their sentences" and more important here "to challenge the *conditions of their confinement*." *Whiteside v. Parrish*, 387 F. App'x 608, 613 (6th Cir. 2010) (quoting *Lewis v. Casey*, 518 U.S. 343, 355 (1996)). What this means is that an inmate possesses a constitutional right of access to counsel and to the courts to challenge the conditions of his or her execution–the manner in which Defendants currently intended to execute the inmate, to paraphrase the Supreme Court, which is distinct from a general challenge to a lethal injection sentence. *Hill*, 547 U.S. at 580 ("The complaint does not challenge the lethal injection sentence as a general matter but seeks instead only to enjoin respondents 'from executing [the inmate] in the manner they currently intend.' "). Plaintiffs therefore have a right of access to the courts that necessitates reasonable provision by Ohio of the means of access enabling the exercise of that right. Access to the courts thus overlaps or intermixes with access to counsel under the relatively atypical circumstances presented by an execution.

Another federal judicial officer addressed essentially the same core issue in *Coe v. Bell*, 89 F. Supp. 2d 962 (M.D. Tenn. 2000), and arrived at a similar conclusion. In that case, a Tennessee inmate sought injunctive relief to prevent state officials from, among other things,

15

"preventing counsel . . . from being present with access to a telephone at his execution." *Id.* at

963. The *Coe* judge explained:

> It is clear that prisoners have a constitutional right to have meaningful access
> to the courts pursuant to the First and Fourteenth Amendments of the United States
> Constitution. *See Lewis v. Casey*, 518 U.S. 343, 347, 116 S.Ct. 2174, 2178, 135
> L.Ed.2d 606 (1996); *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72
> (1977) (holding that "inmate access [must be] adequate, effective and meaningful");
> *Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999). As stated in *Lewis*, "[i]t is for
> the courts to remedy past or imminent official interference with individual inmates'
> presentation of claims to the courts . . . ." *Lewis*, 518 U.S. at 349, 116 S.Ct. 2174.
> In *Thaddeus-X*, the Sixth [Circuit] Court acknowledged that "[t]he importance of this
> right to incarcerated individuals is evident and can hardly be overstated:
>
> > The right to file for legal redress in the courts is as valuable to a
> > prisoner as to any other citizen. Indeed, for the prisoner it is more
> > valuable. Inasmuch as one convicted of a serious crime and
> > imprisoned usually is divested of the franchise, the right to file a
> > court action stands . . . as his most 'fundamental political right,
> > because preservative of all rights.' "
>
> *Thaddeus-X*, 175 F.3d at 391 (quoting *Hudson v. McMillian*, 503 U.S. 1, 15, 112
> S.Ct. 995, 117 L.Ed.2d 156 (1992) (Blackmun, J., concurring in the judgment),
> quoting *Yick Wo v. Hopkins*, 118 U.S. 356, 370, 6 S.Ct. 1064, 30 L.Ed. 220 (1886)).
>
> In evaluating a claim of denial of meaningful access to the courts, this court
> is to "weigh[ ] the interests of the prison as an institution (in such matters as security
> and effective operation) with the constitutional rights retained by the inmates." *Id.*
> at 390, 6 S.Ct. 1064. *See also Turner v. Safley*, 482 U.S. 78, 89-91, 107 S.Ct. 2254,
> 96 L.Ed.2d 64 (1987). In order to raise a claim, a prisoner must demonstrate "actual
> injury." *See Lewis*, 518 U.S. at 349, 116 S.Ct. 2174 ("It is the role of courts to
> provide relief to claimants . . . who have suffered, or will imminently suffer, actual
> harm . . . ."), 353 (prisoner must demonstrate "that a nonfrivolous legal claim had
> been frustrated or was being impeded"). *See also Hadix v. Johnson*, 182 F.3d 400,
> 404-06 (6th Cir. 1999).

*Id.* at 964. Applying this analytic framework to a potential constitutional claim by the inmate,

the *Coe* judge held that the inmate's "right to meaningful access to the courts to assert that right

requires that counsel have some access to the prisoner during the last hour before the execution

16

and be permitted to witness his execution and have access to a telephone until execution has

been successfully carried out." *Id.* at 966.

This same analysis properly informs the debate before the Court, leading to the

conclusion that the lack of any possible inmate-counsel communication during the execution

preparation and culmination is sufficient to preclude summary judgment. Although Defendants

attempt to distinguish or otherwise undercut *Coe*, its reasoning as described above remains

useful and persuasive.[6] It is beyond question that "[t]he right of access to the courts is

fundamental." *Dorn v. Lafler*, 601 F.3d 439, 443 (6th Cir. 2010) (citing *Bounds v. Smith*, 430

U.S. 817, 821 (1977); *Johnson v. Avery*, 393 U.S. 483, 485 (1969)). Plaintiffs here only have

this fundamental access to the courts if they have access to their counsel because it is not

Plaintiffs but their counsel who would contact a court if needed during the events immediately

preceding and constituting the actual execution. The pre-execution consultation between an

inmate and counsel permitted in Section VI(B)(4)(g) of the protocol is therefore not sufficient,

however, despite Defendants' contention to the contrary.

Such limited consultation can never encompass issues or problems that arise during the

_____

[6] Two comments are necessary. First, it is not sufficiently distinguishable to the Ohio access to the courts analysis that Tennessee previously did not permit counsel to witness an execution while Ohio does (upon an inmate's election as described herein). The *Coe* judge also recognized a related need for a means of communication once counsel is present, an issue that pervades Ohio's protocol. The fact that Ohio permits counsel as a witness does not address the communication aspect of *Coe* that remains relevant. Second, although the Sixth Circuit subsequently vacated the injunctive relief order constituting *Coe*, that action does not invalidate the core utility of the district court's decision. *Coe v. Bell*, 230 F.3d 1357, 2000 WL 1477441 (6th Cir. 2000) (unpublished table decision). The appellate court vacated the injunction not because the district court's constitutional reasoning was flawed–a matter on which there was no appellate determination–but on the express grounds that the execution had taken place and the issues were moot. The court of appeals did not opine on the substantive *Coe* reasoning with which this Court agrees today.

execution.  Pre-execution day inmate-counsel communication and a cell-front visit that can last only until 8:45 a.m. on the day of the execution obviously does not enable an inmate and counsel to address issues occurring from that point, and it is during the IV insertion process and thereafter when Ohio has had numerous problems in carrying out its executions.  If Plaintiffs cannot communicate with counsel after the designated 8:45 a.m. cut-off point, then this Court can hardly conclude as a matter of law that Plaintiffs have adequate, effective, and meaningful access to the courts.  The time when events may occur that present a constitutional injury under the Eighth or Fourteenth Amendments is most likely to occur during the medical procedures leading to the actual administration of whatever drug or drugs employed during an Ohio execution.

This is not to say that the Constitution guarantees an inmate an absolute protection against anything that may go wrong and require court intervention.  Reality matters in the calculus, and like the judicial officer in *Coe*, this Court "is skeptical about a prisoner's realistic ability to assert and get redress for a violation of his right to be free from cruel and unusual punishment during the execution itself." *Id.* at 966.  Defendants echo this proposition, arguing that "it seems doubtful that immediate access to the courts could ever be obtained as a practical matter in the event that 'something goes awry' during an execution." (ECF No. 820.)  They assert that a reasonable solution to the inherently impractical nature of concurrent access to the courts is that the law already recognizes a risk of future harm in these types of cases and permits pre-harm litigation like the cases *sub judice*.

The ability to file a lawsuit prior to an execution is only a means of addressing a particular constitutional concern that is foreseeable, such as the contention that the use of a drug

or purportedly protocol-mandated procedure evinces cruel and unusual punishment. Permitting filings based on foreseeable likely events is not logically a constitutional panacea dispositive of the entirety of the counsel/access claim.

The pragmatic pre-harm accommodation to the realities of the execution process that permits a lawsuit in advance of the actual injury is not a comprehensive salve for any and all unconstitutional violations. It simply cannot be. There is always the possibility of unforeseen events that perhaps few could anticipate, such as the distinctly dubious move by Ohio of recruiting a doctor who was not even a member of the execution team to assist in securing IV access for Broom's execution–an event that apparently came to light only after the attempted execution and puncturing Defendants' contention that "Broom was not precluded from presenting such claims to this Court." (ECF No. 820, at 10.) He was, at least during the attempted execution when arguably such a claim would have resulted in immediate action by this Court.

Defendants are correct that some circumstances are readily apparent to counsel during an execution without inmate-counsel communication; they point to the obvious difficulties of obtaining IV access broadcast on closed circuit video during the Broom execution attempt. But other circumstances are less readily ascertainable. If Ohio had obtained vein access and successfully completed the Broom execution, the notable component of Broom's claim involving the participation of actors from outside the execution team would hardly have mattered and would likely have never made its way before this Court in any capacity that would have any consequence to Broom. Passive observation without necessary communication undercuts meaningful access to the courts.

19

These circumstances present an inherent risk of actual injury to the timely and meaningful presentation of non-frivolous claims to a court.  This undercuts Defendants' argument that they are entitled to summary judgment on this aspect of the counsel/access claim because Plaintiffs cannot show the requisite actual injury.  It is self evident.  Requiring Plaintiffs in this unusual context to demonstrate an actual injury under traditional access to the courts analysis (such as a missed filing deadline in a non-frivolous proceeding) makes no sense when many of the claims could not even be recognized until during the execution process.

A larger point that also bears emphasis is that although the means of access compelled by the Constitution do not guarantee a remedy to any constitutional infraction that might arise, it is sufficient that they promote the constitutional aims involved in the execution process.  *See Coe*, 89 F. Supp. 2d at 966 n.7 (noting that although a constitutional right may be difficult to assert during an execution, affording an inmate the constitutional protection of access to which he or she is entitled "will serve as a deterrence" to unconstitutional acts during the execution).  It is the unique nature of an execution that sets this type of conditions of confinement case apart from other prisoner civil rights litigation that would not warrant such concurrent access to the court via access to counsel.

Such access is no doubt without an administrative cost.  Defendants present in their briefing a laundry list of questions that they posit would arise from a conclusion that there is an applicable right in the execution context to access counsel in order to access the courts.  It is perhaps unclear to this Court what analytic function Defendants intend these slippery slope problem scenarios to serve.  A possible inference is that, by highlighting the potentially often inconvenient consequences of affording inmates their constitutional rights, Defendants seek to

persuade this Court not by constitutional analysis but by pragmatic cautions that exist distinct from the words of the Constitution.  The Court may be missing Defendants' point, however, because certainly it cannot be Ohio's position that mere bureaucratic convenience is the measure of the reach of the Constitution.  Defendants' reliance on what they deem "considerable practical reasons" for deciding that the Constitution applies in this context thus proves unpersuasive.

Based on the foregoing analysis, the Court **DENIES** Defendants summary judgment on the inmate-counsel communications component of Plaintiffs' claims.  That portion of the claims remains an issue for trial unless the parties reach an agreement beforehand that would moot the remaining issues.[7]

This leaves for disposition the third component of Plaintiffs' counsel/access claims, or the argument that Defendants are violating the Constitution by failing to afford counsel telephonic access to the governor or the courts while counsel is in the building in which Ohio's executions occur.  Currently, Ohio provides an inmate's counsel only with access to an office containing a telephone located in a separate building from the execution building.  Counsel may bring cell phones and computers into that office.  Defendants' rationale to exclude cell phones or computers inside the actual execution building is purported security concerns.  Plaintiffs contest the obvious inference, and the parties' debate erodes in the briefing to whether Defendants are "attempt[ing] to paint all counsel as potential smugglers."  (ECF No. 861, at 15.)  Hurt feelings

---

[7] For example, having necessarily concluded that Defendants are not entitled to summary judgment because the protocol and practices fail to provide for communication between an inmate and counsel at critical times during the execution process, this Court need not and does not reach the moot issue of whether any necessary provisions implemented would have to provide for confidential communication.  Also beyond the scope of determining whether summary judgment is appropriate is expressing any opinion on what communication procedures would pass constitutional muster.  Such advice is beyond the limited role of this Court.

do not equate to constitutional analysis that can subvert prophylactic policy judgments, and even remote security concerns can nonetheless pass muster as constitutionally reasonable justifications necessitating alternative reasonable accommodations.  It may be less than clear how security concerns might reach counsel's use of an institution phone located in the execution building itself, but what might constitute a more convenient or even best practice is not what is important.  What the Constitution minimally compels is what matters.

Plaintiffs fail to direct this Court to any controlling authority supporting the propositions that the Constitution compels that counsel be permitted to bring a cell phone or personal computer into the building in which the execution takes place or that counsel be afforded the use of a telephone located in that specific building.  The record in turn supports Defendants' contentions that counsel have reasonable access to a telephone and that use of that telephone or counsel's personal cell phone affords an inmate, via counsel, means of accessing a court and/or the state's governor.  Former counsel for Broom was able to contact this Court effectively during the attempted execution of that client, and there is no evidence in the record before this Court that any counsel was ever unable to implement their clients' right to access during the execution process.

As with other issues earlier in this case, the unwritten custom and practices surrounding the protocol again salvage a portion of Ohio's execution process.  The practice of providing counsel with adequate access to a telephone through which counsel can contact a court or the governor proves dispositive of this last aspect of Plaintiffs' counsel/access claims.  There is no basis on this record to conclude that the existing access is insufficient or that greater access, such as direct access as debated in the briefing, is constitutionally compelled.  This Court therefore

22

**GRANTS** Defendants summary judgment on this third component of Plaintiffs' counsel/access claims.

### IV. Conclusion

The Court **GRANTS** Plaintiffs' motion for an extension of time or a stay of the motions *in limine* filing deadline. (ECF No. 866.) The Court will discuss a deadline for the filing of motions in limine at the February 1, 2011 status conference discussed below.

This Court **DENIES** Plaintiffs' motion *in limine*. (ECF No. 867.)

The Court **GRANTS** Defendants' motion for leave to file answers *instanter* (ECF No. 868) and instructs the Clerk to detach the proffered answers and file them on the docket (ECF Nos. 868-1, 868-2, 868-3, 868-4, 868-5, 868-6, 868-7, 868-8, 868-9, 868-10, 868-11, 868-12, 868-13, 868-14, 868-15, 868-16, 868-17).

This Court **GRANTS IN PART and DENIES IN PART** Defendants' motions for summary judgment (ECF Nos. 820, 821, 823, 824, 825, 826, 827, 828, 829, 830, 831, 832, 833, 834, 835, 836, 842) on Plaintiffs' right to counsel and access to the courts claims as set forth herein.

The Court recognizes that this Opinion and Order does not reach the Equal Protection dispute that consumes the remainder of the parties' summary judgment briefing. Recent developments in this litigation necessitate discussion of the limited nature of today's summary judgment decision.

On January 20, 2011, this Court held a telephone status conference at Plaintiffs' request. Counsel for each side presented the Court with several issues, including the fact that Defendants

23

had failed to answer the most recent amended complaints, that it appears Defendants may have failed to disclose discovery material obtained by other means from Kentucky or elsewhere, and that Ohio was soon to alter its protocol and adopt a drug to replace the use of thiopental sodium, the non-expired supply of which is dwindling.  These issues raised numerous concerns that, not inconsistent with the history of this litigation, once again threaten to disrupt the consideration of any potentially dispositive motions and the scheduled trial date.  Since that conference, Defendants have informed this Court that Ohio is indeed changing its protocol.

Amendment of the protocol may necessitate additional discovery that would inform the remaining Equal Protection claims, in addition to presenting cause for Plaintiffs to either seek leave to file amended complaints or new complaints incorporating this information or presenting new claims based on the protocol changes.  Additionally, the possibility that undisclosed discovery may exist that could speak to how Ohio has obtained the protocol drugs and whether it has used or is contemplating the use of expired drugs during an execution is of concern.

The Court directed counsel for Defendants to explore whether this discovery exists–counsel participating in the telephone conference indicated his surprise at the issue–and report back to Plaintiffs.  Plaintiffs have not yet filed a motion under Federal Rule of Civil Procedure 56(d), but the Court recognizes that Plaintiffs' pursuit of the possible discovery and the existence of the new protocol might serve as grounds for such a motion once Defendants inform Plaintiffs of all pertinent facts.  Given the foregoing, it makes little sense to adjudicate the Equal Protection component of this case on the current summary judgment briefing at this time.  At the least, the Court recognizes that it directed counsel to Defendants to report to counsel for Plaintiffs this week and that Plaintiffs may be waiting for the results of that report before

24

deciding on what course of action to pursue.

It does not appear that the facts and evidence related to the counsel/access claims discussed in this Opinion and Order would change in light of the possible discovery violations material or a new protocol.  It also appears that the parties anticipate proceeding on the current briefing in regard to that aspect of the case even before issues regarding the pleading are resolved.  Consequently, the Court has proceeded to address those claims herein and issue its decision.  The Court holds in abeyance that part of the summary judgment motions addressing the Equal Protection aspect of this case until it can untangle the issues surrounding the foregoing recent developments.  Ultimately, the parties may ask the Court to proceed to issue a summary judgment decision on the current briefing or may seek to supplement or replace this briefing.

This Court has already set a conference for February 1, 2011.  (ECF No. 870.)  At that time, the parties must be prepared to discuss all outstanding issues, including the new protocol, any discovery issues, the remaining components of the summary judgment motions, and the possibility of filing amended pleadings or a new case.

**IT IS SO ORDERED.**

                                          /s/   Gregory L. Frost
                                          GREGORY L. FROST
                                          UNITED STATES DISTRICT JUDGE